## Buck McCray, alias Rosson, v. The State.

### No. 1403.   Decided February 9, 1898.

**1. Assault and Battery—Evidence of Another Assault in Same Transaction—Res Gestae.**

Evidence of another assault by defendant upon another party than the prosecutrix is admissible to show the animus of defendant, and as part of the res gestae, where the transaction is the same. As, for instance, where a party who interposes in the first assault is in turn assaulted.

**2. Bill of Exceptions to Excluded Questions.**

A bill of exceptions to the exclusion of a question asked a witness, to be sufficient, must show what the answer of the witness would have been.

**3. Assault and Battery—Irrelevant Evidence.**

On a trial for assault and battery, evidence that a witness is addicted to the cocaine or morphine habit is not admissible where it does not appear to be pertinent or relevant to any issue in the case.

**4. Defendant as a Witness—Impeachment of.**

When the defendant took the stand, as a witness in his own behalf, it was competent to prove by him, on his cross-examination, that he had been previously sent to the reformatory for the crime of sodomy.

**5. Assault and Battery—Evidence that State's Witnesses Were Prostitutes—Impeachment.**

On a trial for assault and battery, it is not competent for defendant to prove that the principal State's witnesses were prostitutes; nor was such testimony competent to impeach said witnesses.

**6. Same.**

While a witness on his own cross-examination can be interrogated as to matters which involve moral turpitude, yet he can not, on such cross-examination, be contradicted or impeached as to such matters, nor can other witnesses be called originally to prove such matters against a witness.

**7. Charge—Abandonment of Difficulty.**

On a trial for assault and battery, a charge upon abandonment of the difficulty is predicable upon facts tending to show that when defendant attacked the prosecutrix, who had previously assaulted him, she fled and he cut her in the back with a knife.

**8. Right to Eject a Trespasser from One's House.**

When a party is creating a disturbance in a house, the owner has a right to eject him, if he uses no more force for that purpose than is reasonably necessary.

Appeal from the County Court of Ellis.   Tried below before Hon. J. C. Smith, County Judge.

Appeal from a conviction for simple assault; penalty, a fine of $25.

The information charged appellant, as an adult male, with making an aggravated assault upon one Eunice House, a female, by cutting her with a knife.   The evidence developing that defendant was not an adult male, that is, not 21 years of age, the court only submitted simple assault, and of that offense he was convicted.

The facts are principally stated in the testimony of Eunice House, and of the defendant, who testified in his own behalf.

Eunice House testified: "My name is Eunice House.   I now live in Dallas, but lived in Waxahachie on July 25, 1897.   Another woman, Nancy Sanders, was living with me at my house at that time.   The de-

fendant, about that date, came out to my house to see Nancy. I heard them quarreling, and I went into the house where they were, and told defendant he must not kick up a fuss at my house. He said he was not going to kick up a fuss, but wanted Nancy to go out with him, and asked me to make her go, to which I replied that Nancy was her own boss. I went out. Directly I heard them fussing again. I went back and ordered him to leave my house. He went out, saying he did not want to kick up a fuss, but wanted Nancy to go out with him. A little later he came back to go in, and I told him he could go in if he would behave himself. Shortly after I heard a row in where he and Nancy were. I ran in to where they were. He was running Nancy around the room, and had kicked and struck her, but I did not see him kick and strike her. When I saw him running her, I told him to leave my house, and started to stop him, when he turned upon me with a knife and cut me three times, once in the hand, once on the arm, and once in the back. At the time I was cut in the back I was running away from him. Dr. Simpson dressed my wounds, and took several stitches on the one in my back. I did not hit him with an Indian club before he cut me, nor at any time. There was an Indian club there, but when I started to get it he took it away from me; and it is not a fact that I hit him with it, nor did I tell Eliza White that I knocked him in the head with it. He cut me first on the arm, and I turned to run, and he cut me in the back. [Witness here showed jury scars on arm and back.] Do not know defendant's age."

Buck McCray, the defendant, testified: "I am the defendant. On the day the assault is charged, I went to the house of Eunice House to see Nancy Sanders. I wanted her to go down on the creek with me. After I had been there some time, I was wrestling with Nancy, when Eunice came in and said I could not raise any fuss in her house, and that I must get out. I said I was not raising a fuss. She said: 'You have got to get out of my house, any way,' and I went out. After a minute later, Eunice and Nancy invited me in again, and I went in. I was trying to get Nancy to go down on the creek with me, and I was sorter wrestling with her; had hold of her and was trying to pull her, when Eunice came in again, and ran up and interfered. She pushed me back, picked up an Indian club, and tried to hit me with it. I was warding off the blows, when they both got hold of me, and she hit me twice on the head. I then pulled out my knife and cut her; cut her twice, and she ran. I cut her in self-defense, to make her stop hitting me with the club. The club was about 16 inches long, and 2½ inches thick at the biggest end. I was not doing anything to Nancy Sanders when she commenced hitting me. Eunice did not put the club down while I was there."

Cross-examined: "I don't know why I cut her in the back, after she had turned to run. It is not a fact that I got after Nancy Sanders and run her down the road, after Eunice got away. I am 19 years old, born December 12, 1877. I was sent to the reformatory about five years ago for sodomy. After the cutting was over, I went to Dallas and was arrested there."

The matters presented in defendant's bills of exception are stated in the opinion.

*Fears & Crocker*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of a simple assault, and his punishment assessed at a fine of $25, and prosecutes this appeal.

Appellant objected to the admission of testimony regarding the assault on Nancy Sanders both before and after the alleged assault on Eunice House. We gather from the record that these assaults were all a part of the same transaction. Appellant assaulted Nancy Sanders at the residence of Eunice House. She interfered, and was, in turn assaulted by appellant. She fled, and then appellant continued the assault on Nancy Sanders, who also fled from the house. The assault on Nancy Sanders is a part of the res gestae, and was evidence pertinent to show the animus of the appellant in his assault on the prosecutrix, and to show how said assault came about. When the witness Eunice House was on the stand, appellant asked her, on cross-examination, if she and Nancy Sanders were not public prostitutes. The county attorney objected, and his objection was sustained. What the answer of the witness would have been is not made to appear. Consequently, we can not consider this bill of exceptions. The same observations apply to the bill with reference to the question asked this witness as to whether or not she was addicted to the use of cocaine and morphine. It is not shown what the answer of said witness would have been. We fail to see how any answer would have been pertinent and relevant to any issue in this case.

In our opinion, it was competent for the county attorney, on cross-examination, to prove by the defendant, who took the stand as a witness on his own behalf, that he had previously been sent to the reformatory for the offense of sodomy; his answer simply going to his credit.

It was not competent for the defendant to prove by the witnesses Jonas Gooden, Bob Dunning, and others that the prosecuting witness (Eunice House) and Nancy Sanders were common prostitutes. If said testimony was offered to impeach the witnesses Eunice House and Nancy Sanders, then we do not believe that the same was competent for that purpose. We would not be understood as holding that on the cross-examination of said witnesses Eunice House and Nancy Sanders, it would not have been competent to prove by them that they were common prostitutes. We are aware that this question has been decided differently in different States; some of the States holding that such testimony was admissible on cross-examination, and others the contrary. See 3 Jones Ev., secs. 842, 843; 29 Am. and Eng. Enc. of Law, p. 805. In Stayton v. State, 32 Texas Criminal Reports, 33, it was held that this character of testimony was not competent, but in that case the decision shows that

the bill did not properly present the question.   In Brittain v. State, 36 Texas Criminal Reports, 406, we held that it was competent, on the cross-examination of a witness, to prove that such witness had been convicted of a felony, or of any offense involving moral turpitude.   We intimated in that case that the examination upon this matter would be confined to a cross-examination of the witness proposed to be impeached by this character of testimony, and that the party cross-examining such witness would have to be satisfied with the answer of the witness upon the subject, and a predicate for the contradiction of a witness could not be laid on this character of evidence.   In McGrath v. State, 35 Texas Criminal Reports, 413, we held that such evidence was admissible, and we see no reason why this should not be the rule.   In common experience it is known that persons who are so morally degraded as to ply their vocation as common prostitutes are not on a plane with the mass of people who follow legitimate and honorable vocations, in the matter of integrity.   As a general rule, they are no more capable of telling the truth than one who has been convicted of a felony, or of some misdemeanor involving moral turpitude, and they are not more worthy of belief than such a one; and we see no good reason, when a witness is tendered by either party, and testifies as to some material issue in the case, why it should not be permitted, on cross-examination, to prove that he follows some illegal or disreputable vocation for a living.   As for that matter, we think it is within the sound discretion of the court, always, on the cross-examination of a witness, to permit to be shown the calling or business followed by such witnesses, his residence, etc.   As was said by Campbell, J., in Wilbur v. Flood, 16 Michigan, 40-43 (cited in Thompson on Trials, p. 404): "It has always been found necessary to allow the witnesses to be cross-examined, not only upon the facts involved in the issue, but also upon such collateral matters as may enable the jury to appreciate their fairness and reliability.   To this end a large latitude has been given, where circumstances seemed to justify it, in allowing a full inquiry into the history of witnesses, and into many other things tending to illustrate their true character.   This may be useful in enabling the court or jury to comprehend just what sort of person they are called upon to believe, and such a knowledge is often very desirable.   It may be quite as necessary, especially where strange or suspicious witnesses are brought forward, to enable counsel to extract from them the whole truth on the merits.   It can not be doubted that a previous criminal experience will depreciate the credit of a witness, to a greater or less extent, in the judgment of all persons, and there must be some means of reaching this history.   The rules of law do not allow specific acts of misconduct, or specific facts of a disgraceful character, to be proved against a witness by others.   *   *   *   Unless the remedy is found in cross-examination, it is practically of no account.   It has always been held that, within reasonable limits, a witness may, on cross-examination, be very thoroughly sifted upon his character and antecedents.   *   *   *   We

think a witness may be asked concerning all antecedents which are really significant, and which will explain his credibility.  *  *  *  He must be better acquained than others with his own history, and is under no temptation to make his own case worse than truth will warrant.    There can, with him, be no mistake of identity.    If there are extenuating circumstances, no one else can so readily recall them.    We think the case comes within the well-established rules of cross-examination, and that the few authorities which seem to doubt it have been misunderstood, or else have been based upon a fallacious course of reasoning, which would, in nine cases out of ten, prevent an honest witness from obtaining better credit than an abandoned ruffian."

While we agree to the rule that a witness on cross-examination can be interrogated as to matters which involve moral turpitude, either on account of conviction for crime, or on account of some avocation, yet we would not be understood as holding that a witness, on such cross-examination, can be contradicted or impeached in regard to such matters, nor that other witnesses may be called originally to prove such matters against a witness.    As stated by the authorities, this would involve a trial of collateral issues, which would often prove interminable.    And we hold that the court did not err in excluding the witnesses called to prove that the State's witnesses were common prostitutes.

Appellant also objected to the charge of the court predicated on an abandonment of the difficulty.    He insists that there was no evidence of such abandonment, and that a charge on that subject was calculated to injure the rights of appellant.    While it appears that the salient issue in the case, so far as the State was concerned, was an unjustifiable assault on the prosecutrix because she interfered when appellant was making an assault on Nancy Sanders in the house of the prosecutrix; and, on the part of the defendant, that the prosecutrix first assaulted him with a club, and in self-defense he was compelled to cut her wth a knife—yet there is some testimony tending to show that the prosecutrix may have (according to appellant's theory) unjustly assailed him in the first instance, but when he attacked her wth a knife she desisted and fled, and that he then cut her in the back.    This theory is further enforced by the defendant himself, who, when asked on cross-examination why he cut Eunice House in the back after she had turned to run, stated that he did not know why.    So we take it that the charge was justified by this phase of the testimony.    The charge of the court on the right of the prosecutrix to eject the appellant if he was making a disturbance in her house, and used no more force for that purpose than was reasonably necessary, stated a correct legal principle, and was justified by the evidence, because she testified that, before she interfered in the difficulty between appellant and Nancy Sanders, she requested him to leave her house, which he refused to do.    If she struck him subsequently, evidently she was justified in doing so; and it appears that she was not able, if she struck him with a club, as testified by him, to eject him from the house,

for he appears to have remained master of the situation, with his knife, and compelled both the prosecutrix and Nancy Sanders to flee from the house. The judgment is affirmed.

*Affirmed.*