## GABE HALL v. THE STATE.

### No. 2420.　Decided February 19, 1902.

**1.—Assault With Intent to Murder—Charge as to Presumption from Weapon Used.**

It is provided by article 676, Penal Code, that "when a homicide takes place to prevent murder, etc., if the weapon or means used by the party attempting or committing such murder are such as would have been calculated to produce that result, it is to be presumed the person using them designed to inflict the injury." Held, this presumption is imperative with the jury as well as with the court, and, when applicable, the provisions of this article must be given to the jury; and it is error to fail or refuse to give it.

**2.—Same.**

See opinion for facts recited from the evidence which clearly authorized and required the court to give in charge a requested instruction embodying the principle announced in article 676, Penal Code, supra.

**3.—Same—Self-Defense—Charge of Court.**

On a trial for assault with intent to murder his wife, where the evidence showed that the parties had separated, the wife taking their children with her to her father's house; and that upon defendant's going there to see the children his wife met him with a pistol, saying, "I am going to kill you," and attempted to shoot him; whereupon he shot her to prevent her from shooting him. Held, defendant had the right to go and see his children in a peaceable manner, whether he had been forbidden by her father or invited by his wife to do so, and it was error for the court in its charge to limit and restrict his right of self-defense to the condition as to whether his wife's father had forbidden him to come upon the premises or whether he had been invited by his wife to come there and visit her.

**4.—Same—Marital Rights—Self-Defense.**

During the existence of the conjugal relations, both husband and wife have the coequal legal right to the care, custody, and control of their children, and neither has the right to prevent the other from seeing them in a peaceable manner; but if, after a separation of the parents, the father goes upon forbidden premises to see his children, intending to bring on a difficulty, if necessary, to see them, and forces an entrance into the premises, producing the occasion for the wife to resist and assault him, his right of self-defense would be forfeited; and whether he shot his wife in self-defense or not, he would at least be guilty of an aggravated assault. And if his intention was to provoke a difficulty and kill his wife, and he did some act or made some declaration reasonably calculated to provoke a difficulty with intention to kill, he would be guilty of assault to murder, whether he shot his wife in self-defense or not. But where defendant sought admission into the premises in a peaceable manner for the purpose of seeing his children, and this was all he did, and his wife assaulted him with a pistol, his right of self-defense would be perfect.

**5.—Limiting Impeaching Testimony—Charge.**

Where the court is called upon to limit impeaching testimony to its proper purposes, it should clearly indicate the evidence attempted to be so limited in the charge.

**6.—Right of Self-Defense—Special Instruction—Apparent Danger.**

On a trial for assault to murder his wife, where there was evidence showing that defendant went to the house to see his wife upon invitation of his wife, a special instruction was correct, and should have been given, which instructed the jury, in effect, that if defendant went upon the premises, whether on invitation of his wife or not, to see his children, and was assaulted, as it appeared to him, in a deadly manner by his wife with a pistol, and he shot her to prevent the injury to himself, they would find defendant not guilty; and that if defendant under such circumstances commenced to shoot, he had the right to continue to shoot as long as there was apparent danger to himself from her assault as it reasonable appeared to him; and that such appearances of danger must be viewed from defendant's standpoint, and if it reasonably appeared to him that such danger existed, he had the right to defend against it to the same extent as if it had been real.

**7.—Witness—Impeachment for Want of Chastity.**

It is not permissible by original evidence, to impeach a witness for truth and veracity by showing that his or her reputation for chastity is not good.

**8.—Assault to Murder the Wife—Evidence.**

On a trial for assault to murder his wife, where it appeared that the parties had separated but had not been divorced, and the children had gone with the mother to live at her father's house, it was error to admit testimony showing that defendant took his little boy in his buggy with the intention of taking him home with him and keeping him a short while. He had equal right with the wife, under the facts shown, to the custody of his child, and it was prejudicial to show efforts on his part to take his children away from his wife.

Appeal from the District Court of Collin. Tried below before Hon. J. E. Dillard.

Appeal from a conviction of assault with intent to murder; penalty, seven years imprisonment in the penitentiary.

This is the third appeal in this case (See Hall v. State, 42 Texas Criminal Reports, 444, and Hall v. State, ante, p. 257), and the essential facts are readily seen from these appeals.

No statement necessary.

*Garnett & Smith, J. M. Pearson, R. C. Merritt,* and *Jones & Eastham,* for appellant.—The proof in this case shows that Susan Hall advanced upon the defendant with a pistol, which was then and there a deadly weapon in the manner of its threatened use, and was making a violent attack upon him in such a manner that the jury might have believed that at the time the defendant shot her she was making a violent attack upon him under circumstances which reasonably indicated an intention on her part to murder or maim him, and in such case the law presumes that she intended to murder or maim him, and the jury should have been so instructed. Jones v. State, 17 Texas Crim. App., 612; Cochran v. State, 28 Texas Crim. App., 431; Kendall v. State, 8 Texas Crim. App., 569.

The court erred in refusing to give the seventh charge requested by the defendant, which is of the tenor following: "If you find and believe from the evidence that the defendant and his wife, Susan Hall, had separated and that she was living at a place different from that where the defendant lived, and she had their children living with her, then you

are instructed that the defendant had the legal right to visit and see his children at reasonable and proper times."

This is submitted as a proposition, and under it we submit the further propositions, to wit:

1.   The charge above requested is unquestionably the law, the facts in this case demanded it, and the defendant had the right to have the jury so instructed without any limitation or restrictions whatever.

2.   The charge given the jury in this case on this subject was not correct; it contained limitations and restrictions, neither authorized by the law, nor warranted by the evidence.

The charge given the jury by the court in this case is erroneous in the following particulars:     (a) The fourth clause, defining malice aforethought, is incorrect and the definition given is not the law.   (b) The eighth clause of the charge is erroneous and misleading in this: the court tells the jury that the law justifies a party unlawfully assaulted in using any means at his command to prevent his assailant from taking his life or inflicting upon him any serious bodily injury, whereas the jury should have been told plainly that a party so unlawfully assaulted was justified under the law in taking the life of his assailant in order to prevent his assailant from taking his life or inflicting upon him any serious bodily injury.   This charge was misleading and was to the prejudice of the defendant in this: the prosecution contended that the defendant had no right to take the woman's life under any circumstances, but that he should run.   (c) The ninth clause of the charge, which is also on the right of self-defense, contains the same vice complained of in the eighth clause.   It nowhere tells the jury that if the defendant was assaulted by Susan Hall, under the circumstances set out, he would be justified under the law in taking her life, but the same is on the weight of the evidence, and intimates to the jury that in the opinion of the court the defendant was not justified in shooting to take the life of his wife, but that he was guilty in shooting the second time and used unnecessary force.   (d) The tenth clause of the charge is subject to the same objection and contains the same vice hereinabove urged to the eighth and ninth clauses, and the entire charge is insufficient and misleading in this: the proof demanded a "clean-cut" charge that if Susan Hall made an unlawful and violent assault upon the defendant with a pistol in such a manner that it then reasonably appeared to him from his standpoint that she was about to kill him or inflict serious bodily injury upon him that the law justified him in taking her life.   (e) The eleventh clause of the charge is erroneous and misleading and is upon the weight of the evidence, in this: the jury are told that the defendant had the legal right to enter the premises of Moses Wright, if not forbidden to do so by Moses Wright, in a peaceable manner for the purpose of visiting his children or for the purpose of visiting Susan Hall, if invited by her to do so, and in doing this he would not be guilty of any trespass, whereas under the law the defendant had the right to go upon the

premises of Moses Wright at any reasonable time to see his children, whether forbidden by Moses Wright or not, if he allowed and permitted the children of defendant to stay at his house. Again, there was no proof in the case whatever that Moses Wright had ever forbidden defendant to go upon his premises for the purpose of seeing his children, and this charge is without evidence to support it. Again, the testimony of the prosecuting witness, Susan Hall, was that she had not left word with defendant's mother for him to come down to Moses Wright's and see her, while the defendant's mother testified that she had requested her to tell defendant to come down and see her, and that she had so informed the defendant. Now under this charge, if the jury believed that the prosecuting witness had not sent him word to come down and see her, then he was not justified, while under every construction of the criminal law of this State the defendant is justified in acting upon the facts as they appeared to him from his standpoint, and if his mother told him the prosecuting witness had left word for him to come down there and see her, and she swears to this and the defendant testifies to the fact that his mother had so informed him, then under these circumstances he would have had the right under the law to act upon the same and go there, notwithstanding the jury may have believed that in fact no such request had ever been made by the prosecuting witness, and that the mother of the defendant testified falsely in this matter. Again, the charge says he had the right to go there in a peaceable manner, and as the proof shows the defendant was armed with a pistol, this limitation was unnecessary, and was not the law, because, under the law, if his children were there at Moses Wright's, he had the right to go and see them. If the jury believed the wife had not requested him to come down and see her, or if they believed that he did not go there in a peaceable manner, or if they believed that Moses Wright had forbidden him to go there, then in any such cases they were told that he was a trespasser in going; and in the next charge they are told about his right of self-defense being abridged. This charge was misleading, was calculated to prejudice the defendant's plea of self-defense before the jury, and did do this. Now, under the law, even if there had been proof that Moses Wright had forbidden defendant to come on his premises (and the record is as silent on this point as the grave), how could this matter have been called for in the charge? The defendant was not charged with assaulting Moses Wright; any transaction between him and the defendant would have been irrelevant, immaterial, and hearsay upon this trial; he was not sued civilly for any trespass upon the right of property; and this instruction could have no place in the law of this case. Under this charge the jury were in effect told that if defendant had gone down there without being invited by the prosecuting witness, or that he did not go in a peaceable manner, if he went under any other circumstances he would be a trespasser. (f) The twelfth clause of the charge is misleading and erroneous in this: it is subject to the same objections hereinabove urged to the eleventh clause, and is further objectionable that it places the burden of

proof on the defendant to show that he did not go down to Moses Wright's with any ulterior design to kill his wife or to make an assault of any kind upon her; it further puts the burden on the defendant to show that he went there at the request of the prosecuting witness, or in a peaceable manner, for the purpose of seeing his children, before he could avail himself of the right of self-defense. Under this charge, if the jury believed he went there for any other purpose, no matter how innocent, except at the request of the prosecuting witness, or for the purpose of seeing his children, in a peaceable manner, then he would have had no right of self-defense. The charge is, "that if he went with no ulterior design to kill his wife or to make an assault of any kind upon her." What kind of an assault? Was it one that under the law would be a felony, or one that was purely a misdemeanor? Unless the defendant went there for the purpose of making an assault upon his wife in order to get a pretext to kill her, he would not have been deprived of the full right of self-defense. If he had gone there with the purpose of making a simple assault upon her, and she had assaulted him in the manner shown in this proof, and he had shot and killed her to protect his own life, he would not have been guilty of a higher offense than manslaughter, and as death did not ensue, he at most could only have been guilty of an aggravated assault and battery. The expression in the charge, "that the defendant went into the yard and premises of one Moses Wright in a peaceable manner," was erroneous and misleading, in this: there was proof in the case that Moses Wright had made threats against the defendant, and the defendant testified that he did not expect any trouble with his wife when he went there, but he would not have gone there without a pistol on account of the threats which Wright had made against him. Now, under this charge, if the jury believed that the defendant was expecting trouble with Wright when he went there and carried his pistol, they may have concluded that he did not go in a peaceable manner, and thereby they could not allow him the benefit of his plea of self-defense. The effect of this charge was to tell the jury the fact that the defendant went there, unless he had been invited by his wife so to do, or that he went there in a peaceable manner to see his children, would deprive him of his right of self-defense, whereas under the law, whether or not his going to the place at which the difficulty ocurred was the cause of the difficulty, and made his action in going there the result of the difficulty, then it was a question of fact and should have been left for the jury whether or not the fact of his going upon the premises of Moses Wright was sufficient and calculated to provoke a breach of the peace and bring on the difficulty, and in this respect this charge is upon the weight of the evidence. (g) The thirteenth clause of the court's charge is erroneous in this: it shifts the burden of proof on the defendant, and did not require the State to prove its case beyond a reasonable doubt. (h) The fourteenth clause of the charge is erroneous and misleading in this: it is subject to the same objections above set out to the thirteenth clause. It is further erroneous in this: it is upon the weight of the evidence,

and in effect tells the jury that the court is of the opinion that in shooting the second shot the defendant was guilty of excessive force and that he shot her after he had disarmed her.   (i) The fifteenth clause of the charge is subject to the same objections hereinabove urged to the fourteenth.   (j) The sixteenth clause of the charge is misleading and erroneous in this: it leaves the jury to guess at what evidence was admitted for impeaching purposes, and if the jury thought that certain evidence was admitted for the purpose of impeaching a witness, notwithstanding the same was pertinent and material to establish the issues in the case, they could not, under it, consider the same.   It left the jury to guess and speculate upon the purposes for which the evidence was admitted, when the same should have been properly indicated by the charge of the court. (k) The seventeenth clause of the charge of the court is misleading and is upon the weight of the evidence.   (l) The eighteenth clause of the charge of the court is misleading and is upon the weight of the evidence, and this matter was unduly repeated in said sixteenth, seventeenth, and eighteenth clauses of the charge and gave undue weight to the subject.

We submit this assignment of error and each paragraph in it as a proposition, and under it we submit the further propositions, to wit:

1.   The exception made to the eighth clause of the charge is well taken.   The charge of the court nowhere informs the jury that if the defendant was unlawfully and violently assaulted by her, in such a manner that it appeared to him he was in danger of death or serious bodily injury therefrom, that he had the legal right to take her life.

2   The proof in this case demanded a charge that the defendant had the right to take the life of his wife if unlawfully assaulted, as above stated, because the prosecution contended throughout the trial that the defendant should run, and had no right to kill a woman.

[The other portions of this able brief are omitted on account of space.—Reporter.]

*Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of an assault with intent to murder, and his punishment assessed at confinement in the penitentiary for a term of seven years.   This is the third appeal of this case, the previous appeals being reported in 42 Texas Criminal Reports, 444, and ante, page 257.

Appellant in his fifth assignment of error complains of the failure of the court to give the following charge: "If the jury find and believe from the evidence that at the time defendant fired the shot that the prosecuting witness Susan Hall was making a violent attack upon him under circumstances which reasonably indicated her intention to murder him, or inflict serious bodily injury upon him, and the weapon used by her and the manner of its use were such as was reasonably calculated to produce either of those results, then the law would presume that the said Susan Hall intended to kill him or inflict serious bodily injury upon

him, and in such case, if defendant so acted, he would be justifiable."
This charge should have been given. Article 676 provides: "When the
homicide takes place to prevent murder, maiming, disfiguring, or castra-
tion, if the weapons or means used by the party attempting or commit-
ting such murder, maiming, disfiguring, or castration are such as would
have been calculated to produce that result, it is to be presumed the per-
son using them designed to inflict the injury." It will be seen from this
article that when the homicide is committed to prevent murder, and the
weapon or means used by the aggressor was calculated to effect that pur-
pose, the code makes it an absolute presumption of law that his design
was to inflict the injury indicated. This legal presumption is impera-
tive with the jury as well as with the court, and when applicable must
be given in charge to the jury. Kendall v. State, 8 Texas Crim. App.,
567; Jones v. State, 17 Texas Crim, App., 612; Cochran v. State, 28
Texas Crim. App., 422.

The learned trial judge, in presenting appellant's defense, did so prop-
erly, except as to this phase, but under the circumstances of this case the
statute imperatively requires this charge asked by appellant to be given.
The testimony authorizing this charge is substantially, as follows: Ap-
pellant testified, that when he got near the porch Susan Hall came out
with a pistol in her hand, and pointed it at him, and said: "You dirty
son of a bitch, I am going to kill you for telling about that Dallas mat-
ter;" that at this time defendant's pistol was in his pocket; that she
drew the pistol on him, and he remonstrated, and she said: "You dirty
son of a bitch you, you shall never see your children again," and leveled
her pistol up, and that he threw up one hand and drew his pistol from
his pocket and shot her in the right side; that when he threw up his left
hand he knocked her pistol up and it fired over his head; that the first
shot struck her in the right side; that she again threw the pistol on him
and he grabbed it with his left hand and shot her in the stomach; that
when he grabbed the pistol with his left hand, the hammer came down on
his hand and made an incised wound between his thumb and index finger
on his left hand; that after he shot her the second time he wrenched her
pistol from her and walked off; that when he first grabbed it he tried
to take it from her, but was unable to do so until she began to weaken
from the effects of the second shot. As stated, we think this evidence
clearly authorized and required the court to give the charge requested by
appellant.

Appellant complains of the eleventh paragraph of the charge of the
court, which is as follows: "The jury are instructed, if they believe
from the evidence that defendant Gabe Hall and Susan Hall were mar-
ried some time during the year 1887, and that they lived together as
husband and wife until the early part of February, 1900, and that about
that time they separated and ceased to live together as husband and
wife, and that Susan Hall took their five minor children with her and
went to reside with her father Moses Wright, and that defendant Gabe
Hall went elsewhere to reside, then you are further instructed that de-

fendant Gabe Hall at any time had the legal right to enter the premises of Moses Wright, if not forbidden by Moses Wright, in a peaceable manner, for the purpose of visiting his children, or for the purpose of visiting his wife, if invited by her to do so, and in doing so he would not be guilty of any trespass; and if the jury believe from the evidence that defendant under these circumstances went upon the premises of Moses Wright upon the invitation of Susan Hall, or for the purpose of seeing his children, with no ulterior object of killing his wife, or making an attack upon her of any sort, then his right of self-defense would not be compromised or abridged in any manner by going upon said premises; and if Susan Hall attacked him with a pistol under such circumstances, in such manner as to cause him to believe that she was then and there about to take his life, or to inflict upon him serious bodily injury, then defendant would have the right to defend himself against such assault, even to the taking of the life of Susan Hall." Appellant objects to this charge on the ground that the same is erroneous and misleading; is upon the weight of the evidence, in that the jury are told that defendant had the legal right to enter the premises of Moses Wright, if not forbidden to do so by Moses Wright, in a peaceable manner, for the purpose of visiting his children, or for the purpose of visiting Susan Hall, if invited by her to do so; and in doing this he would not be guilty of any trespass; whereas, under the law defendant had the right to go upon the premises of Moses Wright at any reasonable time to see his children, whether forbidden by Moses Wright or not, if he allowed and permitted the children of defendant to stay at his house. Furthermore, there was no proof in the case whatever that Moses Wright had ever forbidden defendant to come upon his premises for the purpose of seeing his children, and this charge is without evidence to support it. Again, the testimony of prosecutrix, Susan Hall, shows that she had left word with defendant's mother for him to come down to Moses Wright's and see her; while defendant's mother testified that she had requested her to tell defendant to come down and see her, and that she had so informed defendant. This charge should not have been given in this form. As appellant contends, defendant had the legal right to visit his children. This proposition of law was clearly laid down in the opinions on the former appeals of this case. Appellant had the legal right to go upon the premises to see his children. Still he would have to go in a peaceable manner. The record on this appeal, as on the former appeals, shows that appellant and his wife had separated; the wife taking the children to her father's, Moses Wright. If Moses Wright had forbidden appellant to come upon his premises after permitting the children to remain there, this might be introduced as a circumstance to show that appellant went there for the purpose of provoking a difficulty; but the mere fact that Moses Wright had forbidden appellant to come upon the premises would not, per se, make appellant a trespasser in coming upon said premises. Nor would the fact that his wife had not invited him to come preclude his going upon the premises to see his own children. The

court should have charged that defendant had the legal right to go upon the premises in a peaceable manner to see his children, whether forbidden by Moses Wright or invited there by his wife or not. Appellant insists that the evidence does not show that Moses Wright forbade him going upon the premises. We see nothing to authorize this statement, except an inference to be drawn from the evidence, wherein appellant says he carried the pistol to the premises to protect himself from the threatened attack by Moses Wright. We do not think this statement of appellant authorized the court to charge the jury that Wright had forbidden appellant to come upon the premises. If Moses Wright had forbidden appellant to come upon the premises, such fact would not preclude appellant entering the same in a peaceable and lawful manner, since his children were there, and he had a legal right to see his children; but appellant would not have any right to force an entrance upon the premises, and resist Moses Wright or his wife in entering the premises. If he did so, and the difficulty ensued, brought on by such unlawful act, then appellant's perfect right of self-defense would be forfeited. If appellant went to the premises for the purpose, as stated, of seeing his children, and intending to bring on a difficulty, if necessary, in order to see them, and attempted to force an entrance to said premises, or did some act reasonably calculated to, and which did, produce in the mind of his wife the apprehension and fear that defendant intended to force an entrance, and said acts and conduct on the part of appellant brought about the difficulty, producing the occasion of the injured wife assaulting appellant, then appellant's right of self-defense, to that extent, would be forfeited; and, if appellant shot and wounded deceased (his wife) under such circumstances, then he would be guilty at least of an aggravated assault, whether he shot his wife in self-defense or not. If appellant went to the premises of Moses Wright, where his children were, with the intention of provoking a difficulty and killing his wife, and he did some act or made some declaration reasonably calculated to provoke a difficulty, with the intention to kill, he would be guilty of assault to murder, whether he shot the injured party (his wife) in self-defense or not. The mere intention to provoke a difficulty will not forfeit appellant's right of self-defense, but at the time of the difficulty he must then and there do some act or make some declaration evidencing an intention and calculated to provoke a difficulty, before his right of self-defense is forfeited. This matter is thoroughly discussed in the authorities cited by counsel for appellant in their brief. See Cartwright v. State, 14 Texas Crim. App., 486; Jones v. State, 17 Texas Crim. App., 611; White v. State, 23 Texas Crim. App., 164; Ball v. State, 29 Texas Crim. App., 126; Franklin v. State, 30 Texas Crim. App., 640; Shannon v. State, 35 Texas Crim. Rep., 2; Carter v. State, 37 Texas Crim. Rep., 404; Tollett v. State (Texas Crim. App.), 55 S. W. Rep., 575; Young v. State, 41 Texas Crim. Rep., 442; McCandless v. State, 42 Texas Crim. Rep., 655; Grayson v. State (Texas Crim. App.), 57 S. W. Rep., 808. During the conjugal relation, and before the decree of divorce had been

granted, and before a court of competent jurisdiction has passed on the question of the custody of the children, the husband has as much legal right to the care, custody, and control of them as the wife. The wife has no legal right to prevent the husband from seeing the children. Their legal rights are coequal. This being true, appellant had the right to enter the premises. He had the right in a peaceable manner to seek admission there for the purpose of carrying out his lawful purpose in seeing the children. If this was all that he did, and his wife assaulted him with the pistol, his right of self-defense would be perfect. And as stated, whether invited by his wife or forbidden by Moses Wright, defendant could not be deprived of his legal right to see his children. If his children were placed in the home of Moses Wright, and he could not see his children without resorting to violence, then such legal right to see his children would not be a predicate for using violence to see them, but he would have to resort to the courts of the country. Appellant complains of that portion of the charge which instructs the jury that appellant would have the right to enter the premises in a peaceable manner. We do not think there was any error in this. But the court should not have limited his right to see his children to an invitation from his wife or a prohibition on the part of Moses Wright.

The twelfth paragraph of the court's charge is subject to substantially the same objections urged by appellant to the eleventh paragraph; and we do not deem it necessary to further consider the same.

Appellant complains of the sixteenth paragraph of the court's charge, which reads as follows: "The jury are instructed not to consider any evidence, either written or oral, which was admitted before them for the purpose of impeaching or discrediting witnesses sought to be impeached or discredited." This charge should have been more explicit. Where the trial court is called upon to limit the consideration of certain evidence, to certain purposes, it should clearly indicate the evidence attempted to be so limited in his charge, otherwise the jury could and would not know what evidence was referred to. Appellant further complains of the failure of the court to give the eighth special charge requested by him, as follows: "If you believe from the evidence that defendant Gabe Hall went to the home of prosecuting witness Susan Hall, at the instance and request of the said Susan Hall, or if the mother of defendant (Mrs. J. M. Hall) told defendant that the said Susan Hall wanted him (defendant) to come down and see her as soon as he returned from Dallas, or if you should find and believe from the evidence that defendant went to the home of said Susan Hall to see his children, or for any other lawful purpose without invitation, and the said Susan Hall made an unlawful and violent assault upon defendant with a pistol, and it reasonably appeared to defendant that said Susan Hall was about to take his life or inflict serious bodily injury upon him, and defendant shot and wounded said Susan Hall with a pistol, in order to save his own life, or to prevent serious bodily injury to himself from such unlawful assault so made upon him, then you will find defendant not guilty. And in this con-

nection you are further instructed that, if defendant once commenced to shoot in order to save his life or to prevent serious bodily injury to himself, then he would have the right to continue to shoot as long as there was an appearance of danger to himself from such threatened assault; and in determining whether or not the defendant was in danger from such assault, you are instructed that it is not essential to the right of self-defense that the danger should in fact exist. The danger may be only apparent and not real. If it reasonably appears from the circumstances of the case that danger existed, the person threatened with such apparent danger has the right to defend himself against it to the same extent that he would have were the danger real. And in determining whether there was reason to believe that danger did exist, the appearances must be viewed from the standpoint of defendant, who acted upon them, and from no other standpoint. If it reasonably appeared to defendant that the danger in fact existed, he had the right to defend against it to the same extent and under the same rules as if the danger had been real." This charge is correct, and presents the law, as we view it, applicable to the facts of this case; and should have been given.

Appellant's ninth assignment of error complains, that the court erred in permitting the State to prove by Gaulding that he was acquainted with the general reputation of Anny Moss for chastity in the neighborhood of Garland, in Dallas County, Texas, and that her reputation for chastity in that vicinity was bad. Appellant objected, because the same was irrelevant, immaterial, and incompetent; because the character of said witness for truth and veracity could not be impeached by such evidence; because the State could not introduce such evidence, the same being original evidence on the part of the State, for any purpose; because said Anny Moss had been introduced by defendant as a witness and had testified to material facts, and the purpose of the evidence was solely to prejudice defendant's case before the jury. It is not permissible to impeach any witness for truth and veracity by showing that his or her reputation for chastity is not good. Stayton v. State, 32 Texas Crim. Rep., 33; Woodard v. State, 58 S. W. Rep., 144; McCreary v. State, 38 Texas Crim. Rep., 613; McAfee v. State, 17 Texas Crim App., 139; Conway v. State, 33 Texas Crim. Rep., 327; Lancaster v. State, 36 Texas Crim. Rep., 200. This seems to be the uniform rule in this State. However, at common law, numerous authorities can be found pro and con on the proposition. The only qualification that we have ever placed upon this proposition is, that a witness may be asked on cross-examination if she is a common prostitute, and the party asking the question (State or defendant) is bound by the answer given, and can not call other witnesses to impeach her testimony or disprove her answer. McCreary v. State, 38 Texas Crim. Rep., 613. The eleventh assignment of error complains of the introduction of the same character of testimony.

Appellant also complains that the court erred in permitting the State to prove by defendant, on his cross-examination, that when he went to

John Burns', after the separation between himself and his wife, that he (defendant) took his little boy, Homer Hall, and put him in the buggy, with the intention of taking him home with him and keeping him a short while. We do not think it was proper to allow the introduction of this testimony. The rights of the husband and wife with reference to the care and custody of the children are the same; and if they separate prior to the decree of divorce, or a proper order of the trial court awarding the care, custody, and control of the children exclusively to one parent, each parent has the equal right to the custody of the children. Hence it is prejudicial to introduce before the jury the acts of defendant showing efforts on his part to take the children away from his wife, as shown by this bill.

We do not deem it necessary to pass upon any other questions presented by the assignments of error.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*