IDELLA BRADFORD V. THE STATE.

No. 9494. Delivered November 25, 1925.

Rehearing denied State, October 27, 1926.

1.—Manslaughter—Provoking the Difficulty—Improperly Submitted.

Where, on a trial for murder, the evidence of the state merely showed that appellant armed herself, went to the home of deceased, and called her out, and began shooting at her without a word, as soon as she appeared, these facts did not warrant a charge on provoking the difficulty. The mere fact that appellant armed herself, and sought out the deceased and killed her, did not raise the issue of provoking the difficulty, but see opinion on rehearing.

2.—Same—Continued.

Generally, going to a place, though armed, will not of itself deprive a party of the right of self-defense. The mere fact that one with a grievance, arms himself and seeks an interview with the person who has wronged

him, is not of itself provoking a difficulty, and the defendant is not deprived of her right of self-defense because she seeks her adversary for the purpose of having an explanation or peaceful solution of their troubles, and arms herself to protect herself, if she should be attacked. Following Cartwright v. State, 14 Tex. Crim. App. 499, and numerous other cases cited. Also see Branch's P. C., p. 1098.

ON REHEARING.

### 3.—Same—Provoking the Difficulty—Issue Raised by Evidence.

On rehearing by the state, the attention of the court is directed to a confession of appellant contained in the record, which the court now holds was sufficient to raise the issue, and warrant a charge on the law of provoking the difficulty.

### 4.—Same—Charge of Court—On Provoking the Difficulty—Insufficient.

The charge of the court in this case, submitting the issue of provoking the difficulty, is in the abstract a correct presentation of the law, but is erroneous in that it failed to charge the jury that the appellant had the right to seek an interview with the deceased to receive an explanation, of accusations which she had heard were made against her by deceased to her husband, and if appellant believed that such interview or explanation might be accompanied by danger of death or serious bodily injury to her, that her right of self-defense would not be abridged by her taking a pistol with her on the occasion. Believing that the proper disposition of the case was made in the original opinion, the state's motion for rehearing is overruled.

Appeal from the Criminal District Court of Tarrant County. Tried below before the Hon. Geo. E. Hosey, Judge.

Appeal from a conviction for manslaughter, penalty five years in the penitentiary.

The opinion states the case.

*McLean, Scott & Sayers* of Fort Worth, for appellant. On provoking the difficulty, appellant cites:

Casner v. State, 62 S. W. 914.

Carter v. State, 220 S. W. 335.

Smith v. State, 111 S. W. 1024.

Best v. State, 125 S. W. 913.

Barstado v. State, 87 S. W. 344.

*R. K. Hanger,* District Attorney, Fort Worth.

*Sam D. Stinson,* State's Attorney, and *Nat Gentry, Jr.,* Assistant State's Attorney, for the State.

BERRY, JUDGE.—The offense is manslaughter, and the punishment is five years in the penitentiary.

The party killed was Milie Brown. The state's proof shows that deceased and other parties were at her home about 8:30

o'clock and that appellant went there and called for her. The following from the witness, Mark Brown, correctly presents the state's theory as to how the killing happened:

"I was sitting on the porch and the rest of them was sitting on the porch talking. I saw the defendant, Idella Bradford, when she came up there. She came from towards home. * * *. The first time I saw her she was up there by the porch where I live. I don't know what she had in her hand at that time. She walked up there and says she wanted to see Milie, speak to Milie a short time. At that time Milie was laying across the bed in the house, and her sister, Melissa Brown, was in the house with her, and Aurila Pate was in there. When Idella Bradford said she wanted to see Milie, wanted to speak to Milie, my sister, Francis Brown, called Milie and Milie came to the door. * * * Milie came out on the porch and Melissa she came out there, too, both Melissa and Milie came out on the porch. After she said she wanted to see Milie she did not say anything to me before Milie came out on the porch. When Milie came out on the porch Idella Bradford commenced to holler 'scatter back' and then she commenced shooting. I didn't see where she got the gun from. The gun was a .45 Army Special. She shot four times."

This statement as to the beginning of the difficulty is corroborated by other witnesses for the state.

It was appellant's theory that her husband had told her before the killing that the deceased had claimed to him that appellant had been intimate with a negro by the name of Boas, whom it seems, was a friend to the deceased. That she had denied such intimacy to her husband and went over to deceased's house on the night in question to ask the deceased why she had told her husband that the appellant had been intimate with the negro Boas. Her theory of what happened at the time of the killing is disclosed in the following statement:

"I went down there and I said, 'Francis, is Milie here,' and she says, 'Yes, ma'am.' I says, 'tell her I wants to speak to her.' At that time I was on the edge of the porch. There is no fence or gate there, and when I asked for Milie, Melissa she comes out, she walks out first. She came out with that iron pipe about so long (indicating), and about that big around. She come out with that pipe and says, 'we are going to kill you, you ————— ———————,' and I told her to get back, but she was coming up on me with that iron pipe and I told her four or five times to get back, but she kept coming on up on me and I fired. Milie grabbed the iron pipe and she started up on me with that iron pipe and I told

her to get back, get back, get back, and she says, 'you ————
————, we are going to kill you,' and she drew back and struck
me on the shoulder with the iron pipe and I fired, then Milie and
I run together after I fired the first shot.   She was stronger than
I was at the time, because I was sick and weak, and she bent me
down and she still had that iron pipe in her hand, and the pistol,
I had it wrapped up in my dress."

As the result of this escapade the negro Milie Brown was
killed and Melissa Brown was shot.

The only complaint that we deem it necessary to consider is
that wherein the appellant criticises the court's action in charg-
ing on the question of provoking the difficulty.   We think that
this question was not in this case.   Generally going to a place,
though armed, will not of itself deprive a party of the right of
self-defense.   The mere fact that one with a grievance arms
himself and seeks an interview with the man who wronged him
is not, of itself, provoking a difficulty.   Defendant is not de-
prived of her right of self-defense because she seeks her adver-
sary for the purpose of having an explanation or peaceful solu-
tion of their troubles, though she arm herself so as to protect
herself should she be attacked.   Branch's P. C., p. 1098.   Cart-
wright v. State, 14 Tex. Crim. App. 499.   Ball v. State, 29 Tex.
Crim. App. 107; 14 S. W. 1012.   Airhart v. State, 40 Tex. Crim.
Rep. 470; 51 S. W. 214.   Cook v. State, 43 Tex. Crim. Rep. 188;
63 S. W. 872.   Hall v. State, 43 Tex. Crim. Rep. 487; 66 S. W.
783.   Dodd v. State, 68 S. W. 992.   Crow v. State, 48 Tex. Crim.
Rep. 421; 88 S. W. 814.   Leito v. State, 49 Tex. Crim. Rep. 213;
92 S. W. 418.

We have searched this record in vain for any testimony from
either the appellant's or the state's standpoint that would raise
or tend to raise the issue of provoking the difficulty.   If the
state's testimony is true the appellant went to the home of the
deceased, called her to the porch and shot her; if the appellant's
testimony is true, she went to the home of the deceased for a
purpose that the law permits.   (Shannon v. State, 35 Tex. Crim.
Rep. 6, 28 S. W. 687), and upon asking for the deceased, she
was attacked by her sister and by deceased, and the killing
occurred in perfect self-defense.

We are constrained to hold that the court committed reversi-
ble error in charging on the issue of provoking the difficulty,
and for this error, the judgment of the trial court is reversed
and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Upon mature consideration we are inclined to think we were in error in holding the facts in this case not such as to call for a charge on provoking the difficulty. There is no question but that appellant, armed with a pistol, went to where deceased and her sister lived and shortly thereafter shot both the sister and deceased. In her voluntary statement, which was introduced by the state, appears the following:

"Wednesday night I got my .45 Colt's pistol and went to Myra and Melissa Brown's house. It was about 8 p. m. I asked Francis if her aunt Myra was there. Francis said 'Yes,' and told Myra that I was there and wanted to see her. Myra told me to come in the house, but I told her I did not want to come and asked her to come out in the yard. I had my pistol in my right hand. The porch light was on and Myra must have seen the pistol for she picked up a piece of iron, which her sister, Melissa, took away from her. I began to shoot. I shot two or three times. I meant to kill them."

The party referred to by appellant in said statement as Myra, was deceased. She was referred to by other witnesses as Milie. Another witness, one Nancy Green, testified that she saw appellant going to the house of deceased shortly before the shooting began and that appellant had in her hand a pistol. State witnesses testified that when she got to the house she asked some one to tell Milie to come out there, "Tell her to come out here, I wants to see her;" that the sister of deceased said to deceased, "Don't go out Milie, don't go out," and that appellant again said, "Come on out," and that deceased came out and was followed by her sister, whereupon appellant said, "Scatter back," and shot the sister of deceased twice, and there is some testimony that deceased then made some attack upon appellant and was herself shot and killed. There is testimony from state witnesses that appellant and deceased were fighting in a branch in the yard where the killing occurred. Appellant testified that she went down to the house of deceased to get an explanation of some offensive conduct or language from deceased and that she carried her pistol wrapped up in her dress. She said she called for deceased to come out, and that a sister of deceased came with a

piece of iron in her hand and started toward her in a threatening manner, and that she fired at the sister. She said that deceased then grabbed for the piece of iron and started at her and that she shot at deceased, who then grappled with her, and thinking her life in danger, she shot deceased the second time.

The trial court charged on self-defense based chiefly on the testimony of appellant. Where the accused has gone armed to a place for the purpose of obtaining an explanation, and after searching such place indulges in acts, words or conduct which might be deemed by the jury intentionally provocative of an attack by deceased, it would be the duty of the trial judge to submit the law of provoking the difficulty. The testimony showing that the accused did go to where deceased was, having a pistol in her hand, and that upon seeing her, deceased, or deceased and her sister, attempted to get hold of a piece of iron, or did get hold of it, with which appellant claimed they attacked her, coupled with the language attributed to appellant, might be deemed by the jury sufficient evidence of an intention on the part of appellant to provoke deceased to make an attack upon her which she might use as a pretext in taking the life of deceased. The original opinion will be modified in so far as it holds that the facts in this case do not warrant a charge on provoking a difficulty.

However, when we come to examine the charge given by the court upon this issue, which was duly excepted to, we are of opinion that same is erroneous. The learned trial judge told the jury in substance that if a person, by his or her wrongful act, bring about the necessity of taking the life of another to prevent himself being killed, he cannot claim such killing in his own necessary self-defense, but the killing in such case would be imputed to malice by reason of the wrongful act which brought it about. This gave the jury no sufficient guide or rule to determine what was meant by the wrongful act referred to. They may have concluded that the act of appellant in going to the house of deceased was sufficient to abridge the right of self-defense. This would be manifestly wrong.

The learned trial judge proceeded to tell the jury that he who brings on an affray in which he intends to wreak his malice cannot avail himself of the shield of self-defense, though his own life be imperiled in the affray, and the slayer, if he provoked the contest or produced the occasion with the intention of killing the deceased, etc., is guilty of murder, although he may have done the act of killing suddenly, without deliberation, to

save his own life. This part of the charge is very general and may be subject to the same exception as being entirely indefinite and laying down no sufficient rule for the guidance of the jury who, as above stated, might have been of unanimous opinion that by going to the house armed appellant brought on the affray. Certainly by going to the house armed appellant "produced the occasion."

The court further proceeded to tell the jury in applying the law of provoking the difficulty to the facts herein as follows:

"If you believe therefrom, beyond a reasonable doubt, that the defendant by her own wrongful act brought about the necessity of killing deceased, intentionally, and with a view thereto, or if defendant provoked the difficulty with the intention of taking the life of the deceased, intentionally, and with a view thereto, and that under such circumstances she shot and killed the deceased, then the homicide would be murder, even though she may have done the act of killing suddenly and to save her own life."

That this is confusing is evident. It was admitted that appellant fired intentionally. Such error is further intensified by the failure of the learned trial judge to inform the jury that appellant had the right to arm herself and seek an interview with deceased for the purpose of obtaining from her an explanation of acts and conduct of deceased, which had been reported to appellant by her husband. Where one has been informed of any matter which gives rise to a real or apparent necessity for an explanation or interview with another, and there is reasonable grounds for believing that such explanation or interview might be accompanied by danger of death or serious bodily harm, the right of self-defense will not be abridged merely by the party taking a pistol or other arm with him on the occasion of such interview or explanation. The charge of the court was excepted to for its failure to embody this principle. We are of the opinion that the court should have given same in his charge, and that such refusal was material error for which the case will have to be reversed.

Believing the right result of a consideration of this appeal appears in the original opinion, the state's motion for rehearing will be overruled.

*Overruled.*