## CAL SCOTT v. THE STATE.

### No. 2828.   Decided June 22, 1904.

**1.—Indictment—Duplicitous—Assault Upon Two Persons.**

An indictment charging an assault upon two or more persons by the same act is not bad for duplicity.

**2.—Evidence—Variance—Different Acts.**

Where the indictment alleged an assault upon two persons and the proof showed an assault upon the persons named in the indictment by different acts, but in the same transaction, there was no variance.

**3.—Charge of the Court—Same.**

An instruction to the effect that if the jury believed appellant fired the first shot at either or both the persons alleged in the indictment, where the evidence showed an indiscriminate firing on both sides and that the State's testimony showed that appellant fired the first shot at one of the persons named in the indictment, was justified and proper.

**4.—Same—Assault on Several—Proof.**

Where the indictment charges an assault upon two or more persons, it is not necessary to sustain a conviction, that an assault must be proved on all, but proof of an assault on one of them is sufficient.

**5.—Election by State.**

When it was developed on the proof that appellant did not commit the assault on the two parties named in the indictment by the same act, but committed distinct and separate assaults on these parties, the State should have elected for which assault it would prosecute had a timely motion been made.

**6.—Res Gestae—Evidence.**

Where it appears from the evidence that after the firing began, some one hundred or more shots were fired between the parties, the firing continuing for some time, it was permissible to show by the State that during a lull in the firing, the wife of one of the persons alleged to have been assaulted was shot in the leg by one of the persons acting with defendant, as she

returned to the house and went out on the gallery, and that she had also been fired upon by the same parties as she previously left the house to call for a physician; this being part of the res gestae.

**7.—Charge of the Court—Excessive Force.**

Where the evidence showed that both parties engaged in the difficulty used guns which were evidently deadly weapons, and the question was as to which of the parties began the assault, the question of excessive force was not involved and it was error to instruct the jury on a state of facts which was not in the case.

**8.—Same—Self-Defense—Defense of Others.**

Where the evidence of defense showed that defendant and those with him were first assaulted by the persons alleged to have been assaulted and those acting with them, and that such assault was made upon defendant and others with guns, and that these weapons were such as were calculated to produce death, the court should have charged that it was presumed that said persons so using said guns designed to inflict the injury as viewed from defendant's standpoint.

**9.—Charge of Court—Self-Defense—All Assaulting Parties Must Be Included.**

A charge on self-defense should include all the parties participating in the assault upon the defendant.

Appeal from the District Court of Nacogdoches. Tried below before Hon. Tom C. Davis.

Appeal from a conviction of assault with intent to murder; penalty, three years imprisonment in the penitentiary.

The facts are substantially stated in appellant's brief, as follows:

After the difficulty of the previous day, in which Dr. J. R. Cox and Isom Chandler shot at each other several times, and in which the State claimed the appellant participated as a principal, which claim the jury sustained on the trial of that case, both Cox and appellant were arrested and taken from the village of Swift to the town of Nacogdoches, ten miles away. Here they made bond. While there, the appellant and Cox were informed that the public roads leading from Nacogdoches to Swift, where they lived, were likely to be waylaid by certain men, among whom were John Chandler and Isom Chandler, for the purpose of killing them, and were warned not to travel said roads. Cox and appellant had previously heard of threats made by these men, and had induced the arresting officer to deputize Will Byers, Sam Brown and Zeke Walker to go with them to Nacogdoches and back home, for protection. John Chandler lived on the regular traveled road leading from Nacogdoches to Swift. After making their appearance bonds, the parties left Nacogdoches to go home by way of this road. Just before the party, consisting now of Cox, Byers and Brown and appellant, reached the point opposite the residence of Chandler, a halt was made, and at the suggestion of Cox, about whom the trouble had originated, the parties agreed to pass Chandler's in a gallop, riding single file, with Cox in advance and appellant, Byers and Brown following each other in the order named, about thirty steps apart. This agreement was carried out. When Cox had almost passed the house, which was located about one hundred yards from the road and separated therefrom by a rail fence, a battle began which lasted an hour, and in which

more than a hundred and fifty shots were fired, according to the eye-witness of the State. In this battle Cox, Byers and appellant upon the one side, and the two Chandlers and one Charles Lee, a cousin of theirs, on the other, participated. Cox used a Winchester rifle, while the other combatants used shotguns. It was almost a bloodless conflict. John Chandler received some little injury and his wife was struck in the leg as she started through the cornfield for a doctor, after the firing had apparently ceased. No one else was injured in the least.

The prosecuting witnesses say Cox began the fight by firing on John Chandler, who had been feeding his hogs in the lot and was returning to the house as the party appeared on the scene. When John Chandler rushed into the house, where his gun was, both Byers and appellant shot at him, so these witnesses say; Cox immediately disappeared in the distance, followed by shot from Chandler's gun. Brown, though on the ground, at no time was an actor in this extravagant dispensation of powder and lead. Seven shots only are admitted by the party at the house to have been fired by them, five by the two Chandlers and two by Lee, and those by Lee went into the top of the house. John Chandler fired from a tree near the gate and Isom from a tree near the corner of the gallery. Isom Chandler sought safety under the house and John seems to have deemed the loft a safer place, while Lee "vamoosed the ranch," nor stood upon the order of his going.

When peace was restored Mrs. Chandler alone was holding possession of the premises and the guns. In other words John Chandler was, without cause or provocation, attacked with deadly weapons in his own yard by Cox, Byers and appellant, and when he, his brother and cousin attempted to repel this attack, more than a hundred volleys from the deadliest of firearms in ordinary use (shotguns) were poured into his dwelling house, inflicting injuries upon himself and wife, and putting in danger and terror all of its occupants.

John and Isom Chandler, Charles Lee, and the wife of John Chandler all testified for the State to this effect. T. W. Byers testified for the State to a threat made by appellant the day before. This witness also testified to certain statements made by appellant after the trouble, corroborative of the facts constituting his defense, and to the effect that they were expecting an attack and arranged to pass John Chandler's house swiftly, and to avoid it and lessen the danger; that they were attacked in accordance with their expectations and they simply met force with force.

Sam Brown, who took no part in the fight, presents the defense, according to the record, in the following way: "I was deputized by Sheriff Walters, with Byers and Walker. I was with them as they returned from Nacogdoches. When we got back to a little drain this side of John Chandlers, we discussed the probability of being attacked and decided it was best to travel in single file. Dr. Cox said it was his

row and he would go ahead. Cox was ahead, Byers next, and Scott next and me next. I saw John Chandler shoot the first shot from a tree in the yard. There were fifty or sixty or seventy or maybe one hundred shots fired. I am sure that John Chandler fired the first two shots that were fired by anyone."

George S. King testified that he told appellant in Nacogdoches the day of the trouble that a crowd was waylaying the roads and he was likely to be killed.

B. Blanton testified that a crowd congregated at the residence of Steve Lee on the morning Cox and appellant were taken to Nacogdoches, and that he reported to this crowd this fact. In reply to this statement by him, John Chandler, who was one of the congregation, said: "That don't amount to anything; now is the time to get them. There is enough of us to waylay the roads and get them before they get back, and that he would watch his road if anyone would go with him, and that if they did not he would watch it by himself."

Mrs. Acreage testified that John Chandler told her he fired the first shot.

*Brewer & Lewis* and *D. M. Short & Sons,* for appellant.—The particular intent charged in this indictment is to kill both John Chandler and Isom Chandler; and the particular act charged, accompanying said intent, is an assault upon both John Chandler and Isom Chandler. This act and this intent, with malice aforethought, is descriptive of the particular offense charged. It was not necessary, in order to constitute an offense against the law, to have alleged the assault to have been made upon the two persons, with an intent to kill both of them; but having done so, and it being descriptive both of the intent and of the act, it is absolutely necessary to prove said descriptive averments in order to constitute the offense in the indictment. Wimberly v. State, 7 Texas Crim App., 329; Stewart v. State, 31 Texas Crim. Rep., 153; 1 Greenl. on Ev., pars. 56 to 73; 3 Id., par. 22; 2 Russell on Crimes, par. 706, p. 660. The true test is, if the intent to kill the one is an intention formed and existing distinct from and independent of the intention to kill the other, the two acts can not constitute a single offense. Ashton v. State, 31 Texas Crim. Rep., 482. Upon the other hand, it follows as a logical sequence if the intent to kill two persons accompanies one act, and the same is so alleged, this allegation is descriptive of and constitutes one offense.

Article 605 of the Penal Code is as follows: "If any person shall assault another with intent to murder," etc. The act denounced is an assault by one person upon another person with the particular intention to kill that particular person. The name of the injured parties must be alleged and proved as alleged. Hardin v. State, 26 Texas, 113; State v. Nations, 31 Texas, 561; Wimberly v. State, 7 Texas Crim.

App., 329; Stewart v. State, 31 Texas Crim. Rep., 153; Smith v. State, 31 Texas Crim. Rep., 33; Munson v. State, 21 Texas Crim. App., 329; Bartelle v. State, 21 Texas Crim. App., 500; Gordon v. State, 23 Texas Crim. App., 219; Bradberry v. State, 22 Texas Crim. App., 273; Bell v. State, 25 Texas, 574; Clark v. State, 29 Texas Crim. App., 357.

The indictment in this case charges one action, intent, and one offense. Now one act if it injures two persons, does not thereby become two offenses; and a prosecution for injuring one of them bars another prosecution for injuring the other. Upon the contrary, if the one act and the one intent is so described in the indictment as to include and comprehend both of the persons against whom the act and the intent were called, then the proof must fill the measure of the allegation, and an instruction to the jury based upon the evidence, to be correct, must state that the fact alleged and which must be proved is an assault upon both John Chandler and Isom Chandler by one act accompanied by the specific intent to kill both by means of the one act charged; and that the jury must acquit unless this allegation is proven beyond a reasonable doubt. Sadberry v. State, 39 Texas Crim. Rep., 466; Augustine v. State, 41 Texas Crim. Rep., 59.

In the case last cited the appellant was on trial for killing Phillip Brassel, who was killed at the same time George Brassel was, and appellant had been acquitted for killing George Brassel. The proof in these cases showed several shots to have been fired by several persons acting together. The indictment charged two distinct acts, intents and offenses. Discussing this plea the court says: "This contention might be urged with some force if the killing of both parties was done by one act; that is, if the proof showed that but one shot was fired and it caused the death of both Phillip and George Brassel, then it might be a good plea in bar." The court then cites with approval the language of Mr. Bishop: "Obviously there is a difference between one violation and one transaction, and in the view of our combined authorities there is little room for denial that in one transaction a man may commit distinct offenses of assault or homicide upon different persons and be separately punished for each."

In the indictment here, one violation is charged in the transaction; some of the testimony tends to prove the commission by appellant of several distinct offenses of assault upon each of the alleged injured persons. The question raised and under discussion is not what appellant may have in fact done on that occasion; but what is necessary for the court to tell the jury trying the case based on the allegation of the indictment in order that the verdict may be a true one, according to the law and the evidence. The court is referred to the following cases bearing on this subject, besides those heretofore cited. Fenton v. State, 33 Texas Crim. Rep., 633; Nance v. State, 17 Texas Crim. App., 385; Parchman v. State, 2 Texas Crim. App., 228; Wheelock v.

State, 38 S. W. Rep., 182; Swindell v. State, 32 Texas, 103; Wilson v. State, 45 Texas, 76; Bishop's Crim. Proc., sec. 1052; Gunter v. State, 56 Am. St. Rep., 17; State v. Emery, 54 Am. St. Rep., 878; Hurst v. State, 11 Am. St. Rep., 79; 2 Russell on Crimes, par. 706, p. 660.

The act of the trial court in telling the jury that while appellant is charged with having made an assault upon both the Chandlers with intent to kill them and with malice, yet if he assaulted either to convict him, is so at variance with the reason of the law that further discussion or citation of precedents is deemed unnecessary, and we ask the court to set aside the judgment for this, to us, flagrant violation of the legal rights of our client in this case.

The testimony of Sam Brown, Will Byers and appellant, to the effect that John Chandler began the fight by firing upon Cox with a deadly weapon, imperatively demanded an instruction upon the legal presumption arising in favor of the defendant from the use of such weapons that Chandler intended to kill Cox, and that appellant had the right to shoot, and to continue so long as Chandler did. This the court did not do. Borden v. State, 42 Texas Crim. Rep., 501. The appellant under the testimony mentioned was clearly entitled to this instruction, equally as much so in the companion case in which such an instruction was given. It is statutory and is not intended to be a dead letter. The citizen has the absolute right to its shield in every case of assault where the alleged injured party brings on the difficulty by using the deadly weapon against him.

*Howard Martin,* Assistant Attorney-General, for the State.—The indictment charges that appellant made an assault upon John Chandler and Isom Chandler with intent to murder them. Under the authorities of this State the indictment is not duplicitous. The great weight of the authorities of other States is to the same effect. However, some courts have held that such an indictment charging an assault upon two persons, or the killing of two persons, in the same count is duplicitous. Appellant seems to admit that the indictment is not duplicitous; but he insists that the evidence must show that he intended to kill both John and Isom Chandler; and if it fails to show that his intention was to kill both Chandlers, there is a variance between the proof and the allegations of the indictment. The authorities on this proposition are also in conflict, but the great weight of authority is against his contention. He further insists that as the proof shows he did not intend to kill both of the alleged injured parties by the same act, the court was in error in charging the jury, if he intended to kill either, he could be convicted. On this proposition the authorities are also in conflict. For a discussion of the questions here presented, the State cites the following authorities: Augustine v. State, 41 Texas Crim. Rep., 68;

State v. Bradley, 34 Texas, 95; Rucker v. State, 7 Texas Crim. App., 549; Chevarrio v. State, 15 Texas Crim. App., 330; Nite v. State, 54 S. W. Rep., 763; Peo v. Elsworth, 90 Mich., 442, and authorities therein cited; Commonwealth v. O'Brien, 107 Mass., 208; People v. Alibez, 49 Cal., 452; 1 Bishop New Crim. Proc., sec. 437; 2 Id., sec. 60.

HENDERSON, JUDGE.—Appellant was convicted of an assault with intent to murder, and his punishment assessed at three years confinement in the penitentiary; hence this appeal.

The indictment charges that the assault with intent to murder was committed by appellant in and upon Isom Chandler and in and upon John Chandler. Was the indictment duplicitous? Under the authorities it was not. Rucker v. State, 7 Texas Crim. App., 549; Nite v. State, 54 S. W. Rep., 763; 1 Bishop Crim. Law, sec. 437; vol. 2, sec. 60. As far as we are advised there is but one case which holds that an indictment which charges a homicide of two or more persons by the same act or volition to be bad, as being duplicitous, to wit, People v. Alibez, 49 Cal., 452. That was a case in which appellant was charged with poisoning three people. However, it does not appear that the poison was administered by the same act or volition, and the case appears to have been disposed of on the California statute, which requires that the indictment contain but one offense.

It is further contended that while an assault with intent to murder can be charged to have been committed on two persons, that this must be by the same act; and when it appears from the proof that it was different acts, though in the same transaction, there is such a variance as will defeat the prosecution. In support of this contention appellant cites us to a number of authorities, among others Hurst v. State, 86 Ala., 604; Gunter v. State, 111 Ala., 23, 56 Am. St. Rep., 1; State v. Emery, 68 Vt., 109. We have examined said cases, and they do not, in our opinion, support appellant's contention. They do support the proposition that where a defendant has been convicted or acquitted he can not again be put in jeopardy for the same act or volition. But here there is no question of jeopardy. Of course, if proof had shown that by the same shot appellant had wounded both John and Isom Chandler, or had by the same act attempted to shoot both, there would be no question of variance. But it does not so appear. The facts show an indiscriminate firing on both sides; and the evidence is rather pointed on the part of the State that appellant fired the first shot at John Chandler, whereas appellant's proof, on the contrary, shows that John Chandler fired the first shot at appellant, after which the firing became indiscriminate on the part of Cox and his companions on the one side and the Chandlers on the other side.

On this state of case the court instructed the jury to the effect that, if they believed appellant fired the first shot at either John Chandler or

Isom Chandler, or at both, to convict him. This appellant claims was error, because he contends that the averment that both were shot at is essentially descriptive matter in the indictment, and must be proved as laid. In our opinion this contention is not correct. No more than it would be correct to say that, because the pleader in a case of cattle theft had charged the theft of two or more head of cattle, and had failed to make proof of the theft of all the cattle charged, that there was a fatal variance. An assault on one person, or killing of one person, is a complete offense, and any essential description as to any person alleged to have been assaulted or killed must be proved as laid; but it by no means follows that because an assault is alleged to have been committed on two persons, or two persons are alleged to have been slain, that therefore, before a conviction could be had, both assaults, or both homicides must be proven as alleged. The doctrine contended for by appellant was announced in State v. McClintock, 8 Iowa., 203. But according to Mr. Bishop this is not the correct view. He says: "In reason an assault on A and B is an assault both on A and likewise on B; and when it is proved as to one a complete offense appears equally in the evidence and in the allegation." 2 Bish. Crim. Proc., sec. 60, and see vol. 1, sec. 437. This doctrine is illustrated in Commonwealth v. O'Brien, 107 Mass., 208. There it was said: "It is enough to prove so much of the indictment as shows that the defendant has committed a substantive crime therein specified, although he is not shown to have been guilty of all that is charged against him." This, in our opinion, is in accordance with sound legal principle. The court, therefore, did not err in instructing the jury as was done. However, when it was developed on the proof that appellant did not commit the assault on the two parties named by the same act, but committed distinct and separate assaults on said parties, if appellant had made a timely motion requiring the State to elect for which assault it would prosecute, the court ought to have required such election. But that question was not made here.

Appellant excepted to the action of the court admitting the testimony of Mrs. Bell Chandler, to the effect that during the progress of the difficulty she started out the backdoor and through the cornfield after the doctor; and that appellant and the parties with him, to wit, Cox, Byers and Brown, shot at her, and she returned to the house; that there was a lull in the firing, and she went out on the gallery and sat down. Zeke Walker came up and was talking to her, and one of the Cox party shot her in the leg. Appellant's objection to this testimony was because it was some time after the assault on John Chandler and Isom Chandler had ceased; that the firing had stopped, and she had gone out on the gallery; and that this was no part of the res gestæ of the transaction. It appears from the record that after the firing began, some 100 or more shots were fired between the parties; and

that the firing continued for some time. In our opinion it was a continuous transaction, and all that occurred there was a part of the res gestæ and admissible as tending to show the animus actuating appellant and those with him.

Appellant excepted to various portions of the court's charge. But we will only treat such as we deem erroneous. It is complained that the court should not have given the following charge: "Where a party may believe himself to be unlawfully attacked, or about to be unlawfully attacked, he is justified in using all the force which may appear to him or them to be reasonably necessary, as viewed from their standpoint, to protect him or themselves, but no more. And where a party uses a greater amount of force than is reasonably necessary, the party using such greater force himself becomes the aggressor, and where a party by the use of such greater force shoots, or shoots at another with a gun within carrying distance, with intent to kill, then he can not under such circumstances avail himself of the shield of self-defense, but would be guilty of murder or assault with intent to murder or aggravated assault, according as the jury may find and determine from the evidence, being guided by the law which I give you in this charge." The contention here is that the question of excessive force was not in the case; that the real and only issue was who began the assault, both parties using deadly weapons. This accords with our view of the case. Under the circumstances, as we view them, if appellant Scott and those with him made the first hostile demonstration, or began the assault, they are the guilty parties. If, on the other hand, prosecutor John Chandler and those with him, to wit, Isom Chandler and Charley Lee, made the first hostile demonstration and began the difficulty, they are responsible. Both parties used guns, which were evidently deadly weapons, from the very beginning, and the question of excessive force is not in the case. We are not prepared to say, this issue not being in the case, that a charge thereon might not have injuriously affected appellant. The jury may have considered that, in the opinion of the court, there was testimony somewhere, from some of the witnesses, showing that appellant used more force than was really necessary, although he might have been authorized to use some force for his protection. If indeed he was authorized to use any force, in our opinion he was authorized to use all the force which the evidence shows he did use.

It is also complained that the court erred in failing to instruct the jury in accordance with article 676, Penal Code, that is, "When a homicide takes place to prevent murder, if the weapons used or means used by the party attempting to commit such murder are such as would have been calculated to produce that result, it is to be presumed that the person so using them designed to inflict the injury." From appellant's standpoint, and according to the theory developed by his testi-

mony, he and those with him were first assaulted by the Chandlers and Lee. Such assault was made upon them with guns. The firing began at a distance of about seventy-five yards. If their theory is true, the weapons or means used by their adversaries were such as were calculated to produce death. All the authorities hold that under such a state of case the court should have instructed the jury in accordance with the provisions of said statute. If under such instruction the jury had determined as a question of fact that the first assault was made by the Chandlers on appellant and those with him, and that it was made with deadly weapons, under circumstances showing intention to take life, the law presumes that such was their intention. As was said in Kendall v. State, "The fiat on the law in this respect is inexorable, and binding upon juries as well as courts, that under such a state of facts there shall be but one presumption, and that is that the person slain designed to inflict the injury. This presumption is often of material importance to the rights of a prisoner on trial for homicide, and who rests his defense upon the ground that the homicide was justifiable, in the necessary defense of his own person or the person of another; and in a proper case the jury must be informed of the principle as a part of the law applicable to the case." And see Jones v. State, 17 Texas Crim. App., 402; and Cochran v. State, 28 Texas Crim. App., 422. From appellant's standpoint, and those with him, they were apprehensive of an attack by the Chandlers as they passed his house on the way from Nacogdoches to their home, and there is some testimony in the record showing a threat by the Chandlers to that effect. Before they passed the house they discussed the matter of a probable attack and scattered along the road in single file and were unquestionably on the lookout. It is not controverted that the firing began as soon as Cox, who was in front, approached the front of the house; and it began from both sides. Appellant's witnesses say that the difficulty was precipitated by the Chandlers firing on them, whereas the Chandlers and those with them say it was precipitated by appellant and those with him firing at them. Unquestionably if appellant's theory is correct, in connection with the charge on self-defense, the court should have also instructed the jury with reference to an assault on them of a deadly character.

There is also some criticism of the court's charge in connection with self-defense, in that the acts and conduct of Charley Lee were eliminated. We believe the testimony is uncontroverted that Lee participated in the difficulty, and appellant had the same right to defend against his assault as against the others, and he should have been included in the charge.

For the errors discussed the judgment is reversed and the cause remanded.

*Reversed and remanded.*