### Lige Renow v. The State.

#### No. 4558.   Decided March 10, 1909.

#### Rehearing Denied June 9, 1909.

**1.—Murder—Charge of Court—Statutes Construed—Deadly Weapon.**

Where upon trial for murder the evidence showed that the instrument used by the deceased in attacking the defendant was not as a matter of law a deadly weapon, and did not show such manner of its use which would justify the court in assuming that it was used or intended to be used as such, there was no error in the court's failure and refusal to give in charge to the jury the substance of article 571 (now 676) of the Penal Code. Davidson, Presiding Judge, dissenting.

**2.—Same—Self-Defense—Charge of Court.**

Where upon trial for murder the evidence showed that the deceased and his brother followed defendant some considerable distance, the brother having a stick about two and one-half to three feet long and about one inch in diameter, with which he struck defendant a blow but which was not serious, and the court submitted the law of self-defense, the defendant's rights were properly safeguarded; and the court was not required to submit article 676 supra which was not applicable to the facts, as the weapon used was not manifestly a deadly weapon.

**3.—Same—Rule Stated—Legal Presumption.**

The rule is that in any and every case where it is manifest from the evidence that an attack was being made by the deceased upon the defendant with a deadly weapon, that it is to be presumed under article 676 Penal Code that the person so using it designed to inflict the injury, and the court should so charge, but such legal presumption should not be given in charge where the evidence tended to show an attack of a milder character. Following Orman v. State, 24 Texas Crim. App., 495.

**4.—Same—Charge of Court—Manslaughter.**

Where upon trial for murder the evidence showed that there were ; ⁀erent altercations between the parties just preceding the homicide, some of which did not amount as a matter of law to adequate cause, and the court gave the general statutory definition of manslaughter, and in addition that an assault and battery causing pain and bloodshed was adequate cause, and that the jury in determining the sufficiency of the provocation or adequate cause could look to all the facts and circumstances in evidence at the time of or prior to the killing, but that the sudden passion must arise at the time of the killing, there was no error.  •

**5.—Same—Sufficiency of the Evidence—Murder in the Second Degree—Manslaughter.**

Where upon trial for murder the evidence was such that the jury could have found either manslaughter or murder in the second degree, and the court submitted the law of both these grades of homicide and self-defense, a conviction for murder in the second degree will not be disturbed.

Appeal from the District Court of Denton. Tried below before the Hon. Clem B. Potter.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Emory C. Smith,* for appellant.—On question of submitting article 676, Penal Code: McReynolds v. State, 4 Texas Crim. App., 327; Tollett v. State, 55 S. W. Rep., 335; Cochran v. State, 28 Texas Crim. App., 422, and cases cited in the opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—This is the second appeal of this case. The opinion on the former appeal will be found in 49 Texas Crim. Rep., 281, where the facts are stated in some detail. While there are some discrepancies and differences between the testimony as given on the former appeal and that produced on the trial from which this appeal results, they are not substantially different. On the trial of this case appellant was found guilty of murder in the second degree and his punishment assessed at confinement in the penitentiary for a term of five years.

The court submitted to the jury murder in the second degree and manslaughter. The instructions given with reference to murder in the first degree were, as stated in the court's charge, given only for the purpose of enabling the jury better to understand the law in respect to murder in the second degree and manslaughter.

1. The most important question raised on this appeal is the action of the court in refusing to give in charge to the jury the substance of article 571 (now 676) of the Penal Code. This point was saved by proper bill of exceptions and was asked in connection with the testimony of Shack Isom, who testified in substance that immediately before the fatal shot which killed his brother he had struck appellant with a stick about two and one-half or three feet

in length and about an inch in diameter, and that it was such an instrument as that he could have knocked a man down with it if he had hit him hard enough, and that it was a bludgeon with which he could kill a man. In this connection this witness and appellant had also testified in substance that Shack Isom and the ·deceased, Dolphus (his brother), had followed him some distance, and that immediately before the fatal shot deceased had the stick in his hand when defendant turned or was turning around, and in connection with appellant's claim that he shot in self-defense and under the belief that his life was in danger. This article of our Penal Code is as follows: "When the homicide takes place to prevent murder, maiming, disfiguring or castration, if the weapons or means used by the party, attempting or committing such murder, maiming, disfiguring or castration are such as would have been calculated to produce that result, it is to be presumed that the person so using them designed to inflict the injury." The courts have construed this article and discussed it not infrequently in connection with article 51 of our Penal Code, which is as follows: "The intention to commit an offense is presumed whenever the means used is such as would ordinarily result in the commission of the forbidden act." Closely allied to these statutes is article 717 of the Penal Code, which is as follows: "The instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the party offending; if the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently appears."

It is undenied that the testimony for appellant in this case makes a strong showing on the issue of self-defense. It seems to be settled in the evidence that Shack Isom and Dolphus, his brother, followed appellant some considerable distance. It is admitted by Shack Isom that he struck appellant one blow on the neck or shoulder with the stick in question. He does not seem, however, to have been seriously hurt by it nor was the blow in any sense a severe one. The stick in question is described by Shack Isom as being two and one half to three feet long and about an inch in diameter, and as being a stick that had been used about the cowpen to keep off the calves while milking. It could not, under the decisions of this State, be regarded as in law a deadly weapon. This is well settled in the decisions of this State. See Washington v. State, 53 Texas Crim. Rep., 480. The bludgeon there used was described as "A small piece of dry stove wood about as large around as my wrist and about two feet long." This court had theretofore held that a blackjack fence pole, although used as a rail is not necessarily a deadly weapon. Wilson v. State, 15 Texas Crim. App., 150. In the case of Connell v. State, 46 Texas Crim. Rep., 259, Judge Henderson, speaking for the court, seems in terms to recognize that a stick is not to be classed as a deadly weapon. In that case he says: "If the weapon is not deadly the in-

tention to take life can not be inferred, but must evidently appear." Referring to article 717 of the Penal Code he says: "We know of no case where this article is required to  be given in charge, unless the weapon used was not of a deadly character, such as a stick, a club or a very small knife."

Again, in the case of Burnet v. State, 46 Texas Crim. Rep., 116, it is said: "Where the party used an instrument not likely to produce death by the manner and means of its use, but death does occur, this statute may become a part of the law, but as we understand it never applies unless the intent is an issue in the case." This language was used in connection with a death caused by the use of a bowie knife which was recognized and treated as a deadly weapon. The only cases which we have found where article 676 of the Penal Code (formerly 571) is required to be given are cases where the instrument used was of necessity and as a matter of law a deadly weapon. Such were the facts in the cases of Kendall v. State, 8 Texas Crim. App., 569; Jones v. State, 17 Texas Crim. App., 602; Ward v. State, 30 Texas Crim. App., 687; Skaggs v. State, 31 Texas Crim. Rep., 563; Hatton v. State, 31 Texas Crim. Rep., 586; Orman v. State, 24 Texas Crim. App., 495; Hall v. State, 43 Texas Crim. Rep., 479, 66 S. W. Rep., 783; Pierce v. State, 21 Texas Crim. App., 540.

There was some discussion of the statute in Cochran v. State, 28 Texas Crim. App., 422, but the point was not in fact made and the quotation there made from Kendall's case had no relation to the real question raised. In the Cochran case the instrument of assault was a billiard cue, with the large end used in the hands of a stalwart man, greatly the superior in weight and strength to the person assaulted. In all the history of the decisions of this court few appeals have raised this question, and in every case where it has been applied the instrument of assault has been per se a deadly weapon.

In all those cases, except the case of Jones v. State, supra, the weapon was a pistol used as a firearm, but not as a bludgeon. Now, in this case it is evident, under all the decisions of this court, the stick in question was not as a matter of law a deadly weapon. There is nothing in the evidence touching the manner of its use which would justify the court in assuming that it was used or intended to be used as such. We do not think the testimony warranted the submission of the issue to the jury that judged from appellant's standpoint he might have acted under reasonable apprehension of death or serious bodily injury, but this was a question of fact in the case and not a presumption of law.

The reasoning of the court in the case of Shaw v. State, 34 Texas Crim. Rep., 435, seems to be in point and the principle there announced to rest on a firm foundation. In that case Judge Hurt, speaking for the court, says: "The court charged murder of the first and second degree, and manslaughter and aggravated assault and self-defense. After a careful examination, we discover no error in

any portion of the charge of the court, except that portion relating to the intent to kill. If the appellant intended to kill the deceased (the charge being correct) then the jury would have been justified in finding him guilty of murder in the second degree. This intention is presumed (article 50, Penal Code), whenever the means used is such as would ordinarily result in the commission of the forbidden act; that is, in this case, the death of the deceased. The means used in this case was a stick about one inch in diameter, and two and a half feet in length. Was such an instrument ordinarily calculated to produce death when used as a bludgeon? What is the meaning of 'ordinarily' as used in this article? According to established order; methodical; regular; customary, as the ordinary forms of law or justice; common, usual, Webst. Dict. Now, then, would a blow with such a weapon, such means, usually or commonly result in death? We think not. But concede that the weapon used in this case was not ordinarily, commonly, usually calculated to produce death; still the intent to kill may appear from the manner of its use. Article 612, Penal Code. But if the weapon or means used is not ordinarily calculated to produce death, it must evidently appear from the manner of its use that such was the intention, namely, to kill. The, weapon or means used must possess the quality of what is known as a 'deadly weapon' without regard to the manner in which it is used, or, though not deadly, the manner of its use must show an evident intention to kill. If the weapon be not such a one as is described above, then the law (article 50) makes no presumption to the effect that the offense was intended. But, to the contrary, article 612 forbids such presumption, unless from the manner of its use the intention to kill evidently appears. The character of the weapon can not be fixed or determined by the manner of its use. It must be, ordinarily, a deadly weapon, in order to warrant the presumption in article 50. If the weapon be not such, and the intent to kill does not evidently appear from the manner of its use, then the intent to kill is wanting. But the party may be guilty of murder, though the weapon was not ordinarily deadly, nor from the manner of use the intention to kill is evident, if the injury, resulting in death was inflicted in a cruel manner, or when the circumstances attending the homicide show an evil or cruel disposition. It is not contended by the State that this homicide was attended by any such circumstances, and we need not further notice these. Articles 613-615." It will be observed that the discussion in the case last noted had especial reference to article 717 of the Penal Code (then article 612), but it seems to us that by analogy and legal reasoning the principle announced in the above case is quite as applicable to the article of the Code now under review.

On the subject of self-defense, the court instructed the jury as follows: "Every person is authorized by law to defend himself against any unlawful attack upon his person, and is not required to

retreat in order to avoid the necessity of killing his assailant. If you believe from the evidence that the defendant, Lige Renow, did kill the said Dolphus Isom by shooting him with a pistol, yet, if at the time he did so the said Dolphus Isom and Shack Isom, together, or either one of them alone,. was making or about to make an unlawful and violent attack upon said Lige Renow, such as was reasonably calculated to produce the belief in the mind of the defendant that it was the purpose and intent of the said Isoms, or either of them, to take his life or inflict upon him a serious bodily injury; or, if from all the facts and circumstances in evidence, as viewed from the defendant's standpoint, it reasonably appeared to defendant that said Isoms, or either of them, were about to make an unlawful and violent attack upon him such as was reasonably calculated to produce the belief in the mind of the defendant that it was the purpose and intent of the said Isoms, or either of them, to take his life or inflict upon him a serious bodily injury, and if the defendant shot and killed Dolphus Isom for the purpose of protecting himself from such real or apprehended attack, then such killing will be deemed to be in self-defense, and you will acquit the defendant."

So .that unless the court was required to give in charge article 676 it would appear that the rights of appellant were properly safeguarded. This article is but the legislative enactment of a truism and embodies the experience of all the ages, and that is, that where one in malice, uses an instrument, the necessary, if not the inevitable, effect of which is to produce death, that the person so attacked may act upon this presumption without question. This is the only proper deduction, as we believe, from all the cases and is particularly in harmony with the decision of Judge Willson in the case of Orman v. State, 24 Texas Crim. App., 495. In that case he says: "Upon the issue of self-defense, the evidence in the record now before us is in no material particular different from that which was before us on the first appeal, and yet the learned trial judge gave in charge to the jury the substance of article 572, which portion of his charge was promptly excepted to by the defendant. We still entertain the opinion that such charge was inapplicable to the facts of this case, calculated to confuse and mislead the jury, and injuriously to affect the defendant's rights. As made by the evidence, the issue of self-defense was governed by the provisions of article 570 alone, and article 572 should not have been given in charge. (Kendall v. The State, 8 Texas Ct. App., 569.) In the case just cited, it is said: 'If the attack of the person slain was manifestly with the intent to murder or maim, that is, made with weapons or other means calculated to produce either of those results, then there is no occasion to instruct a jury as to the law which obtains in case the attack was of a milder character, because such law is not applicable to the case, and can subserve no purpose other than to confuse the jury.' It is manifest, from the evidence in this case, that if the deceased, at the

time he was shot by the defendant, was making any attack upon the defendant, it was an attack with a deadly weapon, and made with the intent to kill the defendant or inflict upon him serious bodily harm. There is no evidence even tending to show an attack of a milder character." We believe that the law is there correctly stated and that in any and every case where it is *manifest* from the evidence that an attack was being made with *a deadly weapon* that the legal presumption should be given in charge, and that it should not be given in charge where, as in this case, the evidence tended to show "an attack of a milder character." If this article is required to be given in this case, then it would be required to be given in every case where the weapon of attack was of a character calculated to inflict serious bodily injury. It is well settled, under all the decisions that the court is required to give, for the benefit of the defendant, a charge that where the weapon was not deadly in its character, or was not used in such a manner as to manifest clearly an intention to kill, that the presumption would be that such was not the intention. As stated, this article of our statute has not, we believe, been required to be given in any case, unless the weapon used was of the character known in the law in its strictest sense, as a deadly weapon, and we believe and hold in ·this case that the court did not err in refusing to charge as requested.

2. The next ground of complaint is in respect to the charge of the court in reference to the law of manslaughter. The court gave the general statutory definition of manslaughter, and in addition, in the 11th paragraph˜ of the charge, gave the following: "An assault and battery by the deceased, or one acting with him upon the defendant causing pain or bloodshed is adequate cause." This was in accordance with the decision of the court on former appeal and indeed no exception is made to this part of the court's charge. Immediately following this is the following instruction: "In determining the sufficiency of a provocation or adequate cause you are instructed that you can look to all the facts and circumstances in evidence, whether they transpired at the time of or prior to the killing, but the sudden passion herein defined must arise ·at the time of the killing." The complaint, as we gather it, of the charge of the court in respect to manslaughter, is that it did not apply the law of manslaughter to the facts and evidence in the case, and was so phrased in illustrating the issue of adequate cause as to lead the jury in determining whether or not adequate cause existed, to exclude from consideration the assault by deceased and his brother upon defendant and their search of him for a pistol at the commencement of the difficulty. It is urged that the court should have instructed the jury that if deceased and his brother Shack Isom at the commencement of the difficulty unlawfully assaulted, seized, held and searched appellant for the pistol, then such unlawful assault and its effect upon the mind of defendant might be considered by them in

connection with the acts and conduct of the deceased and his brother Shack Isom at and immediately before the shooting in determining whether such shooting was done under the immediate influence of sudden passion arising from adequate cause. In this connection it is further urged that the court erred in the 11th paragraph of his charge quoted above, and the following portion thereof: "In determining the sufficiency of a provocation or adequate cause, you are instructed that you can look to all the facts and circumstances in evidence, whether they transpired at the time of or prior to the killing." This is objected to because the expression "provocation" was calculated to mislead the jury and probably misled them in that they were authorized to consider the cursing and quarreling by defendant, and his offer to go into the Isom horselot and take therefrom the horse in dispute, and thus consider such conduct a provocation, and the consideration thereof confused and neutralized the evidence showing sudden passion in defendant and adequate cause therefor. We have uniformly held that where in any case the evidence shows any fact which by law is made adequate cause the court should and must so instruct the jury that the facts so proven as a matter of law constitute adequate cause. Ordinarily, however, where the facts relied upon to show adequate cause are not by law made such, it is sufficient for the court to submit the case to the jury after defining manslaughter and adequate cause, and inform the jury that in determining whether there is in the case adequate cause they may look to all the facts and circumstances in evidence. This was done in this case, and the jury in terms told that they might look to all the facts and circumstances in the case not only arising at the time of the fatal encounter, but as well as those occurring prior to the killing. We do not feel that the court was called on to undertake to single out the particular parts of the evidence and instruct with reference to same where such facts do not amount as a matter of law to adequate cause. We think indeed that the charge of the court is a very clear, correct and lucid presentation of the law on this issue.

3. The only other substantial ground of complaint is that the verdict of the jury is contrary to and unsupported by the evidence, and under the facts, assuming that appellant was not justified in the killing on the ground of self-defense, that his offense could be of no higher grade than manslaughter. We confess that if it were an original question as to the guilt of appellant, assuming that he was not protected by his plea of self-defense, we should be strongly inclined to the belief that he was not in fact guilty of any more than manslaughter. However, there are many circumstances in the case from which the jury might have inferred that notwithstanding the prior assault on him, the disparity in the age of himself and the assaulting parties, that as a matter of fact his mind was not rendered incapable of cool reflection, but on the contrary with much

deliberation he was holding himself in readiness to assail his adversaries if not indeed leading them on to an affront which would justify an assault by him; and there is some evidence which would support the findings of the jury, and in deference to their judgment we decline to interfere.

Finding no error in the record, the judgment of the court below is affirmed.

.*Affirmed.*

JUDGE BROOKS, on rehearing, desires it stated that if it be conceded that article 676 should have been given in charge, he is of opinion that the failure to give same could not in any event have injured appellant. Motion overruled.

[Rehearing overruled June 9, 1909.—Reporter.]

DAVIDSON, PRESIDING JUDGE (dissenting).—I respectfully enter dissent from the affirmance of this case, and am of opinion that article 676, Penal Code, should have been given in charge to the jury, and the failure of the court to do so is not only error, but error of such a material nature as should require a reversal of the judgment. The Legislature enacted this statute in aid of the right of self-defense. By its provision legal presumption is indulged favorably to self-defense in line with that general doctrine. It intended to and does harmonize with the well recognized doctrine enunciated in our Code which does not require the assaulted party to retreat, and which does cast all blame upon him who brings about the necessity of the assaulted party exercising the right of self-defense. Throughout our Penal Code there runs the doctrine that he who is the aggressor is the blamable party and against his attacks the assaulted party is accorded all legal presumptions favorable to his right of self-defense. When the attack is of sufficient moment to threaten life or serious bodily injury and the "weapons or means used by the party attempting to commit murder, maiming, disfiguring or castration, or such as would have been calculated to produce that result, the legal presumption is that such attacking party intended to take life or inflict serious bodily injury." Article 676 of the Penal Code was enacted to the effect that if the "weapon or means" used by the party attempting or committing either of the offenses enumerated are such as *"would have been calculated"* to produce that result, the legal presumption becomes conclusive that the party so using the means or weapons "designed to inflict the injury." This has been the uniform construction placed upon this statute, and it has been held where the facts justifies a charge, that such charge must be given, and it is reversible error to either refuse or fail to give it. The statute is broad enough and was intended to cover the use of all "weapons or means" which are *"calculated"* to produce death, and where such weapons are used the presumption is that the person so

using such weapons and means "designed to inflict such injury." No particular weapon, character of weapon or particular means are specified in the statute otherwise than "such as would have been calculated to produce that result." Whenever the "weapons or means" used are such as would have *been calculated to produce such result,* the requirements of the statute are met and the charge demanded. This is one of the most sacred doctrines of the law of self-defense and admits of no construction which in whole or in part eliminates or contracts it to narrower lines than as specified in the statute. The courts must enforce this statute as it is written, and are without authority to limit the meaning of the words employed within a more narrow compass than specified by the wording of the statute. Any other construction tends to place it out of harmony with the doctrine of self-defense and brings about confusion, curtails the right of self-defense and gives a meaning to the statute not intended by the law making power, and violative of the language employed. This statute does not specify such *weapons* as are *deadly per se* nor confine the presumption to the. use of such weapons as guns and pistols, etc. The terms are far broader and much more comprehensive. They include any and all *"weapons"* and all *"means"* used such as *"would have been calculated to produce that result."* It has been held in a long line of decisions in this State whether a gun or pistol would be a deadly weapon would largely depend upon the manner of its use. So it might be of other instruments. A weapon might be a deadly one under some circumstances and not so under other environments. A pocket-knife may or may not be a deadly weapon, owing to the manner of its use and the other circumstances attending the case. Illustrations might be multiplied indefinitely of what might be a deadly weapon such as would be *calculated* to produce death, such as would form the basis for the legal presumption that the person so using it designed to inflict the injury. As I understand from the testimony in this case, the stick or bludgeon used by the deceased could be used with deadly effect and was such as would produce death. There is no question but what the law of self-defense was in the case, and it was by reason of the attack made by the stick or bludgeon. If that bludgeon was such as *was calculated to bring about death,* then the legal presumption would follow from that fact that the party "intended to inflict the injury." Therefore, I say that the construction sought to be placed upon the statute is too narrow in limiting it to such weapons as are commonly known as deadly weapons per se. Other deadly weapons are as well included in this statute if such *"weapons"* are *"calculated"* to produce such result as contemplated by the article under discussion. I, therefore, respectfully dissent from the affirmance of this case and from the construction placed upon this article, and am further of opinion that the trial court was in error in refusing and failing to charge the provisions of article 676 supra.