### Frank Deneaner v. The State.

#### No. 128. Decided April 6, 1910.

**1.—Murder—Charge of Court—Use of Deadly Weapon—Presumption.**

Where, upon trial for murder, the evidence showed that the husband of the deceased shot at the codefendant of the defendant with a shotgun but missed him, when said codefendant returned the fire and by mistake killed the deceased, it was reversible error not to have given in charge to the jury article 676, Penal Code, on the presumption of the weapon used by the husband of the deceased. Following Yardley v. State, 50 Texas Crim. Rep., 644.

**2.—Same—Evidence—Res Gestae—Self-Serving Declarations.**

On trial of murder, where the evidence showed that the defendant and several of his codefendants had left the scene of the homicide, and some fifteen minutes thereafter had a conversation about it, there was no error in not admitting their acts and declarations with reference to the homicide, as this was not res gestae but self-serving declarations. Following Foster v. State, 8 Texas Crim. App., 248, and other cases.

**3.—Same—Evidence—Declarations and Acts of Third Parties—Attorney and Client.**

On trial of murder, there was no error in refusing to admit testimony as to the advice of counsel given to the codefendant a day or two before the homicide with reference to his rights in respect to trespass on his crops; the same being too remote.

**4.—Same—Evidence—Trial of Codefendant—Failure to Introduce Witnesses.**

Upon trial of murder, it was error to permit the State's counsel on cross-examination of defendant's witnesses, to show that they were not introduced as witnesses on the trial of a codefendant; the defendant having neither the power to adduce nor prevent the introduction of such testimony.

**5.—Same—Evidence—Impeaching Witness.**

Where, upon trial of murder, the defendant had laid a predicate to impeach a State's witness with reference to her statement that the husband of the deceased had not fired at the defendant and his codefendant at the time of the homicide, it was reversible error not to admit testimony to impeach the said witness' statement. Following Rippey v. State, 29 Texas Crim. App., 37, and other cases.

**6.—Same—Charge of Court—Principals—Words and Phrases.**

Where, upon trial of murder, the evidence did not show that the defendant spoke or made any gestures to encourage his codefendants at the time of the shooting, the court in his charge on principals should not have used the phrase "words or gestures."

**7.—Same—Charge of Court—Unintentional Shooting—Words and Phrases.**

Upon trial of murder, where the court in charging upon the law of murder in the second degree as applied to the facts, which showed that one of the codefendants while intending to fire at the husband of the deceased killed the latter, the court should have used the word "unintentionally" instead of the words "by mistake."

**8.—Same—Charge of Court—Conspiracy.**

Where, upon trial of murder, the evidence raised the issue of conspiracy between the defendant and his codefendant, there was no error in the court's charge that they could not consider the acts and declarations of said codefendants against the defendant, unless they were made during and in pursuance of the conspiracy.

Appeal from the District Court of Waller. Tried below before the Hon. Wells Thompson.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Brockman, Kahn & Williams, A. G. Board, Doremus & Butler, Lamar Bethea, Harvey & McDade, R. E. Hanney* and *A. G. Lipscomb,* for appellant.—On question of court's failure to submit art. 676, Penal Code, cases cited in opinion.

On question of court's refusal to admit in evidence the acts and declarations of defendant's codefendant as res gestae: Jones v. State, 38 Texas Crim. Rep., 87; Riojas v. State, 36 Texas Crim. Rep., 182; Doucette v. State, 45 S. W. Rep., 800; Duke v. State, 35 Texas Crim. Rep., 283; Williams v. State, 24 Texas Crim. App., 637; Sanders v. State, 31 Texas Crim. Rep., 525; Wiley v. State, 33 Texas Crim. Rep., 406; Conway v. State, 33 Texas Crim. Rep., 327.

On question of court's refusal to admit in evidence advice of counsel to codefendant: Duke v. State, 35 Texas Crim. Rep., 283; Williams v. State, 24 Texas Crim. App., 637; Poole v. State, 45 Texas Crim. Rep., 348; Hill v. State, 52 Texas Crim. Rep., 241, 20 Texas Ct. Rep., 326; Simmons v. State, 31 Texas Crim. Rep., 227.

Upon question of the court's action in permitting State's counsel to show that defendant's witnesses had not been introduced as witnesses in the trial of the codefendant: Favors v. State, 20 Texas Crim. App., 155; Tyler v. State, 11 Texas Crim. App., 388; Maines v. State, 23 Texas Crim. App., 568; Barbee v. State, 23 Texas Crim. App., 199; Marshall v. State, 5 Texas Crim. App., 273; Nalley v. State, 28 Texas Crim. App., 387; Luttrell v. State, 40 Texas Crim. Rep., 651.

On question of court's refusal to permit defendant to impeach State's witness: Scott v. State, 23 Texas Crim. App., 521, and cases cited in opinion.

On question of court's charge on murder in the second degree: Reynolds v. State, 8 Texas Crim. App., 412; Guffee v. State, 8 Texas Crim. App., 187; Ainsworth v. State, 8 Texas Crim. App., 532, and cases cited in the opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—This is a companion case to that of Fazina

v. State, which is reported in 100 S. W. Rep., 394. The homicide on which this charge of murder was based grew out of the same facts as are set forth at some length in the opinion of the court in the Fazina case, though the evidence is far from being identical, and there were some issues raised and some testimony introduced in this case that does not appear in the Fazina case. The statement of facts is quite voluminous and is replete with contradictions and it would require more time and space to make a detailed statement of the facts than seems essential or necessary in view of the matters which will be hereafter discussed. So far as material to an understanding of the opinion, the facts of the case will be stated hereafter. For the most part the case was very well tried, but we think there was more than one error committed by the trial court and that some of these errors were of such importance and in respect to such material questions as must of necessity reverse the case.

1. The most important and obviously the most certain error was the action of the court in failing to give in charge to the jury article 676 of our Penal Code to this effect: "When the homicide takes place to prevent murder, maiming, disfiguring or castration, if the weapons or means used by the party attempting or committing such murder, maiming, disfiguring or castration are such as would have been calculated to produce that result, it is to be presumed that the person so using them designed to inflict the injury." In addition to other testimony which rendered it necessary to give this charge was the following testimony of appellant: "I saw him disappear in the house and go in the direction of the gun, then I tried to jerk my gun away from Angelina Vince; she had kept holding it and trying to get it away from me, and I jerking her and she jerking me, and I wanted to get out of the way, and pulling at the gun, I pulled her off the gallery and out in the yard, and while she and I were struggling that way, just after we got out in the yard, and while she still had hold of my gun Ross Mongonio came back to the door from the inside with his gun in his hand, and at that instant Jennie Mongonio stepped towards the door; she was standing about the middle of the gallery and stepped towards Ross to keep him from coming out, and just at that instant he fired at John Fazina, who had jerked his gun loose from Peter Vince, or Peter had turned it loose, I don't know which, when Ross run in the house, and had gotten off of the north end of the gallery, and was going away, north, and had his back to Mongonio when Mongonio shot at him. And as Mongonio shot John turned around quick and without taking aim fired one barrel of his double-barreled shotgun at Mongonio, but missed Mongonio and struck Mrs. Mongonio, or I suppose he must have, because she instantly fell forward, partly in the door and partly on the gallery, and when she fell Ross Mongonio was right in the door with his gun in his hand. John did not lay his gun on anything to shoot, he was not that close to the end of the gallery." Under all of the decisions a shotgun used as a firearm is a

deadly weapon and under an unbroken line of decisions, since before the days of Kendall v. State, 8 Texas Crim. App., 569, it is essential to give this article of our Penal Code in charge whenever and wherever there is evidence raising this issue. The fact that appellant was not the party fired upon or that he was a companion of the other party assaulted, does not alter the case. This precise question came before the court in the case of Yardley v. State, 50 Texas Crim. Rep., 644, 100 S. W. Rep., 399, where, among other things, the court say: "Appellant reserved an exception to the action of the court in failing to charge article 676, Penal Code, to wit, that the facts of this case imperatively required the court to charge on the presumption of the weapon that deceased was shown to have used; that in such case the court should have told the jury, if the deceased had unlawfully attacked Woodward, and in such case appellant had the right to slay at once. An inspection of the court's charge discloses that while he gave a charge on appellant's right to act on behalf of Woodward under article 675, he nowhere charged the presumption from the use of a deadly weapon by deceased under article 676. All the authorities teach that in a proper case this charge is imperatively demanded and a refusal to give it is error. See Kendall v. State, 8 Texas Crim. App., 569; Jones v. State, 17 Texas Crim. App., 602, 13 S. W. Rep., 651, and other authorities cited in subdivision 1165a, Penal Code; and see Scott v. State, 46 Texas Crim. Rep., 305, 81 S. W. Rep., 950, 10 Texas Ct. Rep., 964. In this case it occurs to us that the crucial point was who began the difficulty. If Woodward began the difficulty, or if Woodward unlawfully provoked deceased to make the attack in order to have a pretext for killing him and appellant was cognizant of that fact, then the right of defense of another did not accrue to him at all; but if when appellant and Woodward went down to the clubhouse and a casual difficulty occurred between Woodward and deceased, and deceased became the aggressor and made the first assault on Woodward, then the right of self-defense did accrue to Woodward and to his companion, Yardley. There is no question that deceased Carroll used a deadly weapon. Most, if not all, the witnesses state that he fired the first shot with a Winchester rifle. Accordingly, appellant was entitled to a charge based on the presumption following from the use of a deadly weapon by deceased." The following authorities also sustain this proposition: Renow v. State, 56 Texas Crim. Rep., 343, 120 S. W. Rep., 174; Hall v. State, 43 Texas Crim. Rep., 257, 66 S. W. Rep., 783; Jones v. State, 17 Texas Crim. App., 602; Scott v. State, 46 Texas Crim. Rep., 305, 81 S. W. Rep., 950; Cooper v. State, 48 Texas Crim. Rep., 36; Cochran v. State, 28 Texas Crim. App., 422; Ward v. State, 30 Texas Crim. App., 687; Ivory v. State, 48 Texas Crim, Rep., 279, and Paderes v. State, 45 S. W. Rep., 914.

2. An important question is raised in respect to the refusal of the court to permit appellant to prove by a number of witnesses, including Tony Fazina, that they saw appellant and his two codefendants, John

and Joe Fazina, within about fifteen minutes after the shooting of Jennie Mongonio, deceased, which shooting they heard, and at about the time it would take appellant and his codefendants to reach home from the scene of the shooting, across the field at a rapid walk, the distance being about a half mile. Just what is res gestae and when a statement shall be treated as hearsay or self-serving declaration is among the most difficult questions that we are called upon to solve. Not a few cases have held in respect to the matter of time that a statement more remote in time than the one here offered would nevertheless be admissible as res gestae. We think, however, that the question of time is not the sole test, but that it is a matter to be viewed and decided with reference to other indicia and testimony. In this case if we look to the nature or character of the evidence sought to be introduced it seems to lack the element of spontaneity and does not impress us as being res gestae, or come within the definition of the event speaking through the witness, but rather would be narrative of past events and in view of the fact that all three of these parties from the time of the shooting until the time the statements were made, were together with opportunity to concoct a defense and where it was natural, if not inevitable, that they should there consider and talk among themselves concerning the recent tragedy, we are not inclined to agree that this testimony was admissible. Foster v. State, 8 Texas Crim. App., 248; Bradberry v. State, 22 Texas Crim. App., 273, and Powers v. State, 23 Texas Crim. App., 42.

3. Nor do we think there was any error in the court's refusing to admit the testimony of J. S. Parker as to the counsel and advice he gave John Fazina a day or two before the homicide with reference to his rights in respect to trespass on the crops by hogs. This matter was so incidentally involved in the controversy and so remote that we think that the acts and declarations of third parties, or the advice given by this witness would not be admissible for any purpose.

4. On the trial the State was permitted on cross-examination of Tony Fazina, Joe Cuteta, Horace Henry Levi Hinson, Mrs. Frank Denina, Mors John Fazina, L. Rizotti, Joe Salino, Luke Palumo, Mrs. Joe Cuteta and Mrs. Rose Stabla, to show that they were not introduced as witnesses on the trial of Joe Fazina, which was had at Bryan, Texas, beginning March 22, 1906, when the said Joe Fazina was alone on trial, and in not permitting appellant to prove by his witness, J. E. Butler, who was one of his counsel, and who was also one of the attorneys who represented said Joe Fazina on said trial, the reasons why certain testimony was not introduced and the evidence of certain witnesses offered on that trial. The facts sought to be proved by the State and which the court permitted the State to prove was objected to because appellant was not on trial jointly with said Joe Fazina and was in no way in control of the trial, was not in any way responsible for the manner in which it was conducted or the proof introduced, or for the failure to introduce any testimony; that this was a matter

he could not control and that his case ought not to be prejudiced by the management of the case of another and that the introduction of this testimony before the jury trying him was in effect introducing and getting before them the acts and declarations of other parties in a transaction in which he was not a party and for which he could in no way be bound. It seems to us that this objection was well taken. We can well understand how, if appellant had once been tried that the appearance of a witness presumably known to him not introduced on the first trial where there was any suspicion of fabrication, would have been a circumstance important and relevant to the issue, but to permit the State to introduce the failure of someone else to produce certain testimony in a case to which this appellant was not a party, and where he had neither the power to adduce nor prevent the introduction of the testimony, is to prejudice his case by the failure of another, without his fault and without his consent. This testimony on another trial should not be allowed. Barbee v. State, 23 Texas Crim. App., 199.

5. Again, we think the court erred in refusing to permit appellant to prove by the witness Leon Salvago, on cross-examination, that on the morning after the homicide Angelina Vince made a statement to the coroner, W. G. Mitchell, Esq., that Ross Mongonio fired at defendant and his codefendants and missed them; that he got mad at the gun and broke it, and that that was why he broke it. A predicate had been laid to impeach the witness Angelina Vince on this issue and this testimony sought to be introduced by the witness Salvago was in direct impeachment of the testimony of the witness Angelina Vince and this impeachment was in respect to a matter of importance. Rippey v. State, 29 Texas Crim. App., 37; Exon v. State, 33 Texas Crim. Rep., 461; Taylor v. State, 38 Texas Crim. Rep., 552.

6. There are a great many objections made to the charge of the court both in respect to murder in the first degree, murder in the second degree and manslaughter. In a general way the charge of the court was a clear and sufficient presentation of the issues raised in the testimony. We notice, however, that in charging on the law of principals, the court stated: "And did aid them, or either of them, by acts, or encouraged them or either of them, by *words or gestures.*" This clause of the court's charge was objected to on motion for new trial and criticised because there was no proof that appellant spoke any word or made any gesture, or did any act in encouragement of any of the parties doing the shooting. The matter is not, perhaps, very important, but we think the phrase "words or gestures" might on another trial be well omitted. This language, it should be stated in this connection, occurs in more than one place in the charge and on another trial the court's charge should be corrected by its omission.

7. Again, complaint is made of the following clause of the court's charge, which occurs in the 19th paragraph of same: "If you believe from the evidence beyond a reasonable doubt that the defendant in

this case upon his express malice aforethought with intent to kill Ross
Mongonio, shot at Ross Mongonio with a gun, and by mistake killed
Jennie Mongonio, you will find the defendant guilty of murder in
the second degree." The use of the word "mistake" in this connec-
tion is criticised for the reason, as urged, that the use of such term
implies an intentional shooting of Jennie Mongonio by mistaking her
for Ross Mongonio and not that shooting her was unintentional. Prob-
ably in strictness this view is correct, and yet we think it wholly
unlikely that to any jury the whole charge taken together would bear
this construction because the jury are instructed that if appellant with
intent to kill Ross Mongonio shot at Ross Mongonio, and by mistake
killed Jennie Mongonio, that his offense would be murder in the second
degree. To avoid, however, any possible ground of complaint, we
suggest on another trial that for the words "by mistake" the court
substitute "unintentionally."

8. Among other things criticised is the 28th paragraph of the
court's charge to this effect: "Testimony of certain alleged acts and
declarations of John Fazina and Joe Fazina have been admitted in
evidence in this case, and you are instructed that before you can con-
sider such acts or declarations against the defendant you must first
believe beyond a reasonable doubt that said acts were done and said
declarations made during and in pursuance of a conspiracy between
defendant John Fazina and Joe Fazina, to take the life of Ross
Mongonio or Jennie Mongonio." This charge is complained of, among
other reasons, because there was no evidence upon which to base same;
that it was a charge on the weight of the evidence, and implied, if it
did not in terms convey an intimation that a conspiracy did exist to
take the life of Ross Mongonio; and further that the court should have
instructed the jury as a part of this clause that the said acts and dec-
larations of John and Joe Fazina could not be considered by the jury
as evidence tending to establish the evidence of a conspiracy. Without
going into details, we think there was abundant evidence justifying
the court in giving this charge; nor do we think that same is on the
weight of the evidence and so far from being error in not charging
the jury that the acts and declarations of Joe and John Fazina could
be considered by the jury as evidence tending to establish the existence
of a conspiracy, that we think to have so instructed the jury would
have been an invasion of the province of the jury and would in sub-
stance have withdrawn from the jury the whole issue of conspiracy.
We have discussed but a few of the many questions raised on the
appeal. A number of these questions are of a character not likely to
arise upon another trial. In respect to matters of evidence not dis-
cussed, we think there was no error in the ruling of the court, and
considering the charge of the court in connection with the special
charges given at the request of appellant, we think, except in the re-
spects above noted, that same is a fair, clear and sufficient presenta-
tion of the law of the case.

For the errors pointed out, the judgment of conviction will be set aside, the cause reversed and remanded for another trial and it is accordingly so ordered.

*Reversed and remanded.*

(McCord, Judge, disqualified.)